𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## STATE HIGHWAY AND TRANSPORTATION COMMISSIONER OF VIRGINIA

### v.

### ELMER L. DONELSON, ET AL.

January 16, 1981.

Record No. 781808.

Present: Carrico, Harrison, Cochran, Poff, Compton, and Thompson, JJ.

*John S. Morris, III, Assistant Attorney General* (*Marshall Coleman, Attorney General; Walter A. McFarlane, Deputy Attorney General; John S. Bundy; White, Elliott & Bundy,* on briefs), for appellant.
*Hugh P. Cline* (*Cline, McAfee & Adkins,* on brief), for appellees.

THOMPSON, J., delivered the opinion of the Court.

In this appeal we are called upon to decide whether evidence of the amount of gross sales of a business operated on condemned property is admissible in a condemnation proceeding to show the fair market value of the property taken. The land in question is a .13-acre tract located in Russell County. Situated upon the parcel was a "fast-food" drive-in restaurant known as the "Frosty-Bossie." Both the land and appurtenant restaurant were owned by Elmer and Janet Donelson (the Donelsons).

The State Highway and Transportation Commission (Highway Commissioner) filed a petition in the Circuit Court to have the property condemned so that certain improvements could be made to United States Route 58, known as the St. Paul By-pass. Commissioners were appointed by the court, and the matter was heard on December 19, 1977. At the proceeding the Donelsons were permitted, over objection, to introduce evidence that during 1975 their restaurant generated $174,715.14 in gross sales; however, no evidence was presented with regard to operating expenses, investment, depreciation, or other similar profit-reducing factors. Elmer Donelson further testified that between January 1 and May 19, 1976, the date of the taking, gross sales of the business were approximately ten percent higher than in 1975.

Fred Wagner, a qualified real estate appraiser employed by the Virginia Department of Highways and Transportation, testified on behalf of the Highway Commissioner. Wagner appraised the land at $12,485 (based on 5,675 square feet at $2.20 per square foot), and the building at $9,937 (including improvements), rendering a total appraised value of $22,422 for the property.

Robert E. Huff, an operator of a nearby drive-in restaurant, testified on behalf of the Donelsons that he considered the market value of the condemned property to be between $90,000 and $95,000. Elmer Donelson testified that the fair market value of the property taken was at least $100,000.

In their report, the commissioners fixed the value of the property taken at $50,000. The condemnor duly excepted to the report, but the court, by order entered September 21, 1978, overruled the exceptions and confirmed the report of the commissioners. The Highway Commissioner filed this appeal challenging the admission of evidence of gross sales of the business and contending that the court below erred in granting Instruction I. For the reasons hereinafter set forth, we reverse.

## I. *Evidence of Gross Sales.*

■ The trial court admitted the Donelsons' evidence of gross sales on the grounds that it was a proper element of the "capitalization of income" method of appraisal.

In *May* v. *Dewey,* 201 Va. 621, 112 S.E.2d 838 (1960), we held that evidence of gross receipts or gross sales of a business conducted upon land that is the subject of condemnation proceedings is not admissible to prove the fair market value of the land taken. 201 Va. at 633, 112 S.E.2d at 847. In that case, as here, evidence of the gross sales of a restaurant[1] operated on the land was introduced in the trial court for the purpose of showing the value of the property. On appeal, we reversed, stating that testimony as to gross sales should not have been admitted.[2]

In *Appalachian Power Co.* v. *Anderson,* 212 Va. 705, 187 S.E.2d 148 (1972), we noted that net income, unlike gross income, may in some instances be admissible to show the value of income-producing property under the "capitalization of income method of appraisal." 212 Va. at 711, 187 S.E.2d at 154. But in that case we said that net income is proper evidence to be considered in fixing the value of the land only "[a]fter taking into consideration investment, depreciation, operating expenses and other proper items. . . ." *Id.* While this does allow certain evidence of the productivity of the land (or a business on it)[3] to be introduced, nothing in that case in any way affects the holding of *May* that the gross sales figure of a business, in itself, is

---

[1] The fact that the restaurant was operated by a tenant rather than by the owner, as in this case, was of no significance in *May.* 201 Va. at 633, 112 S.E.2d at 847.

[2] Evidence of rent paid by the operator of the business to the owner was admissible as "tending to prove the value of the land."

[3] We agree with the Attorney General's contention that while  profits or income attributable to the land may be admissible in some instances, those derived from the operator's skill and expertise in management of a business are not. Nevertheless, such a line is not always easy to draw and may often be a question for the fact finder.

irrelevant and inadmissible. In *Appalachian,* we disallowed evidence of net rental income because the property involved was undeveloped and thus was not income-producing property, but we said that the owner of the trailer court could have used the capitalization of income method as to the developed trailer sites if he had used

> "correct and accurate information as to cost, expenses, depreciation, remaining life of property, percentage of vacancy and rate of return."

*Id.* at 712, 187 S.E.2d at 154-55.
Here there was no evidence of such "profit-reducing" items, and therefore we hold that the evidence of the Frosty-Bossie's gross sales was irrelevant and improperly admitted.

## II. *Instruction I.*

■ The trial court, over the objection of the Highway Commissioner, gave the following instruction:

### "Instruction I

"The Court instructs the Commission that loss of prospective profits in this business is not an element for consideration in determining the fair market value. However, if you believe from the evidence that there is no market then the Commission may consider the *gross profits* to show the productivity of the property, which is analogously [sic] to an evaluation by capitalization of rents or profits based on prior experience." (Emphasis added).

It appears from the record that the trial court intended to use the term "gross sales" rather than "gross profits" in the instruction. With either term included, the instruction would have been improper.

As we have just demonstrated, gross sales of a business may not be relied upon in determining the fair market value of the land upon which the business is located. Thus, if by "gross profits" the Court meant—and the Commissioners understood—"gross sales," the instruction is an incorrect statement of law for reasons already recited.

If, on the other hand, the term is interpreted to mean "gross profits" or "profits", there was no evidence from which "profits" could have been determined. In this regard the instruction was improper as having no support in the evidence.

The instruction was based on language from *United States* v. *Atomic Fuel Coal Company,* 383 F.2d 1 (4th Cir. 1967). In that case the

Court held that a mineral lease was compensable in proceedings for the condemnation of the overlaying land. The Court stated that, if there was no market for the lease, its fair market value could be determined by the "productivity" [4] of the leased property, similar to determination by "capitalization of rents or profits." 383 F.2d at 5. However, we need not decide whether the legal principle therein enunciated is valid as the instruction based upon the principle was clearly improper in the present case.

Since there was no evidence of the Frosty-Bossie's financial condition other than past gross sales, and such information in itself is irrelevant to the value of the land taken, we hold that the trial court erred in admitting such evidence. We also hold that the giving of instruction I, whether interpreted to mean "gross profits" or "gross sales", was also error. For these reasons we reverse the judgment of the trial court and remand the case for a new trial.

*Reversed and remanded.*

---

[4] Note that the court did not use either "gross sales" or "gross profits."