# FAIRFAX COUNTY PARK AUTHORITY

## v.

# VIRGINIA DEPARTMENT OF TRANSPORTATION

Record No. 930391

February 25, 1994

Present: All the Justices

William McCauley Arnold (Cowles, Rinaldi & Arnold, on brief), for appellant.

James F. Hayes, Senior Assistant Attorney General (Stephen D. Rosenthal, Attorney General; Mary Yancey Spencer, Deputy Attorney General; William B. Moore; Schwartz, Ellis & Moore, on brief), for appellee.

Amicus Curiae: (James C. Kozlowski, on brief), in support of appellant.

JUSTICE LACY delivered the opinion of the Court.

In this appeal of a condemnation award, we consider the appropriate basis for valuing land subject to a trust agreement providing that ownership of the land vests in a church if it is used for purposes other than a park.

In 1970, David Lawrence executed a trust agreement dedicating a 639-acre parcel to be used as a park. The trust agreement names Fairfax County Park Authority (FCPA) as the beneficiary in possession of the trust so long as the property in the trust is used as a public park dedicated to the memory of Ellanor C. Lawrence. If the property is used for any other purpose, title to the land passes to the trustees of the St. John's Episcopal Church, who then own the land free from any restrictions. In the event of condemnation, the trust agreement requires the FCPA to contest the condemnation proceedings in "every fashion reasonably possible," but condemnation of a portion of the park land does not pass the remaining property to the Church.

In 1988, the Virginia Department of Transportation (VDOT) filed a certificate of condemnation for approximately 13 acres of the park property to expand and improve existing roadways. The certificate subsequently was amended to reduce the taking to 2.6497 acres in fee simple, 1.0584 acres for a temporary easement, and .3685 acre for a drainage easement.

VDOT filed a motion in limine seeking to establish the criteria for valuation of the condemned park property. The trial court ruled that the measure of compensation was the property's fair market value as restricted by the trust. The parties waived a hearing before commissioners and presented evidence to the trial court of the value of the condemned property restricted to use as a park.

VDOT's appraisal witness, Edward S. Williams, III, testified that the value of the property used as a park or an open space was $2,125 an acre based on four sales he considered comparable. Clyde A. Pinkston, the appraisal witness presented by FCPA, testified that there was no market for park land and, therefore, the property, if restricted to use as a park, had no market value. If used for residential purposes, Pinkston testified that the condemned property would have a market value of $125,000 an acre.

The trial court, treating the land as park land, held that there was a market for the property as park land and accepted Williams's appraisal of $2,125 an acre. The court entered a final order setting the condemnation award at $6,450. We awarded FCPA an appeal.

■ We first consider FCPA's contention that the trial court erred in holding that the value of the condemned land must include consideration of its restricted use. In reaching this conclusion, the trial court acknowledged that cases in other jurisdictions have taken contrary positions. Some jurisdictions value the land based on the restricted use while others disregard such restrictions. *See generally* W.W. Allen, Annotation, *Measure of damages or compensation in eminent domain as affected by premises being restricted to particular educational, religious, charitable, or non-commercial use,* 75 A.L.R.2d 1382 (1961). The trial court elected to follow those cases which required consideration of the restricted use because of their factual similarities to this case. In each instance, the land taken comprised only a small portion of the condemnee's parcel. In our opinion, this factor—the amount of land taken relative to the amount left the owner—has little relevance to determining just compensation due as measured by fair market value, the standard mandated in condemnation proceedings in this Commonwealth. Va. Const. art. I, § 11; *Appalachian Power Co. v. Anderson,* 212 Va. 705, 708, 187 S.E.2d 148, 152 (1972). Therefore,

we must look to other grounds for determining the appropriate treatment of the use restriction in valuing the land taken in this condemnation proceeding.

In seeking support for their respective positions, the parties noted that we have not previously determined whether use restrictions such as those present in this case should be applied in determining the amount of the condemnation award. We have held, however, that similar restrictions should not be taken into account when valuing land for taxation purposes.

In a series of cases the Richmond, Fredericksburg and Potomac Railroad Company (RF&P) challenged the assessments of its railroad yard in Alexandria, the Potomac Yard: *Richmond, F. & P. R.R. v. State Corp. Comm'n,* 230 Va. 260, 336 S.E.2d 896 (1985); *Richmond, F. & P. R.R. v. State Corp. Comm'n,* 219 Va. 301, 247 S.E.2d 408 (1978); *Richmond, F. & P. R.R. v. Commonwealth,* 203 Va. 294, 124 S.E.2d 206 (1962). The assessments were attacked on various grounds, but as pertinent here, RF&P sought reduction in the appraised value because the land could only be used as a railroad yard. Furthermore, as in the instant case, part of the land was subject to an indenture agreement that provided that if the land was used for purposes other than maintenance or construction of railroad tracks, ownership of the land would revert to the United States government. We rejected on various grounds RF&P's argument that restricted use as a railroad yard and the indenture agreement should be considered in determining the market value of the property. *Richmond, F. & P. R.R. v. State Corp. Comm'n,* 230 Va. at 261, 336 S.E.2d at 896-97; *Richmond, F. & P. R.R. v. State Corp. Comm'n,* 219 Va. at 318-20, 247 S.E.2d at 418-19; *Richmond, F. & P. R.R. v. Commonwealth,* 203 Va. at 300-01, 124 S.E.2d at 210-11.

As relevant here, we held that it is the fair market value of the land, not the value of the land *to the owner,* which is subjected to taxation. Therefore, the market value of the land is derived by considering the various uses to which the land is susceptible, not just those uses to which a particular owner may be restricted. If, however, the land is so committed to a particular use that it cannot be put to another use economically, we held that, under those circumstances, it is appropriate to take the committed use of the land into consideration when determining the market value of the land. *Lake Monticello Serv. Co. v. Board of Supervisors,* 237 Va. 434, 440-41, 377 S.E.2d 446, 450 (1989); *Richmond, F. & P. R.R. v. Commonwealth,* 203 Va. at 300, 124 S.E.2d at 210.

While these principles establish the circumstances under which use restrictions should be considered in calculating the fair market value

of property in the context of real property taxation, we see no reason why they should not be applied in the context of the instant case. Fair market value of land is used not only for taxation purposes, but, as we have said, it is the prescribed method for determining the amount of "just compensation" due in condemnation proceedings. *Anderson,* 212 Va. at 708, 187 S.E.2d at 152. To adopt one set of principles for determining the fair market value of real property in a condemnation proceeding and another set to make the same determination for taxation purposes could result in a single parcel of land having more than one fair market value. Such a result would be inconsistent and inequitable and is unnecessary.

These principles are consistent with the condemnation jurisprudence of this Commonwealth. Condemnation is an *in rem* proceeding and, while the land is valued from the point of view of an owner rather than the condemnor, the value established is not the value to the owner personally. *Highway Commissioner v. Reynolds,* 206 Va. 785, 788, 146 S.E.2d 261, 263 (1966). A determination of a particular owner's loss relative to that of others is only undertaken in the second step of the condemnation proceeding in which the condemnation award is allocated among those with interests in the property. Code § 25-46.28; *Williams v. Fairfax County Redev. & Hous. Auth.,* 227 Va. 309, 315, 315 S.E.2d 202, 205 (1984).

Finally, there is no evidence here that the condemned land was so committed to use as a park that it was not economically feasible to put the land to other uses. In fact, the trial court held that the highest and best use of the property was for residential purposes. There were no legal impediments to that use. Nor are future improvements required to adapt it for residential use. *Appalachian Power Co. v. Johnson,* 137 Va. 12, 26, 119 S.E. 253, 257 (1923). Therefore, applying the principles stated above, we find that the fair market value of the property condemned in this case should be calculated without regard to the use restrictions placed on it by the trust agreement. In light of our disposition of this issue, we need not address the other errors assigned by FCPA.

Accordingly, we will reverse the order of the trial court and remand the case for further proceedings consistent with this opinion.

*Reversed and remanded.*