*836
 
 OPINION
 

 Per Curiam:
 

 In this appeal, we consider the appropriate method for assessing the taxable value of income-producing real property when the property’s improvements contain constructional defects. This case arises from respondent the State Board of Equalization’s determination with respect to the 2004-2005 tax assessment of appellants’ properties. Each appellant owns a property containing an apartment complex. According to appellants, the 2004-2005 tax assessment of their properties did not properly account for constructional defects present in their apartment complexes. The State Board of Equalization asserts that the constructional defects were properly accounted for in determining the full cash value of appellants’ properties by adjusting the capitalization rates in the income capitalization method used under NRS 361.227(5)(c) to determine the properties’ full cash value.
 

 In general, the income capitalization method for valuing property evaluates the following two factors to determine a property’s full cash value: (1) the annual income that a hypothetical buyer expects to receive from the property, and (2) the rate at which the buyer expects a return on his investment in the property or the capitalization rate. Because those two factors account for the income a property is expected to generate and the condition of improvements on the property, including any constructional defects, the income capitalization method is an appropriate method for assessing the full cash value of income-generating property that contains constructional defects in its improvements. The record in this case demonstrates that the State Board of Equalization exercised its best judgment in raising the capitalization rate to assess appellants’ property values in light of the complexes’ constructional defects. We thus affirm the district court’s order denying judicial review of the State Board of Equalization’s decision.
 

 FACTUAL BACKGROUND
 

 Appellants are 16 subsidiaries of Olen Residential Realty Corporation (collectively Olen Residential). Olen Residential’s 16 apartment complexes are located in various locations in and around Las Vegas, Nevada.
 

 Before respondent, the Clark County Assessor, performed Olen Residential’s tax assessments, Olen Residential informed the Assessor that it had discovered significant constructional defects at
 
 *837
 
 some of its apartment complex properties. Olen Residential requested that the Assessor reduce the taxable value of its properties based on the constructional defects. The Assessor refused and instead assessed Olen Residential’s properties as prescribed under NRS 361.227, without accounting for the constructional defects. First, the Assessor determined the properties’ taxable values, under subsection 1 of that statute. Then, to ensure that the properties’ taxable values did not exceed their full cash values,
 
 [1]
 
 the Assessor determined the properties full cash values using one of three alternative valuation methods provided by subsection 5 of that statute — the income capitalization method.
 

 Believing that its tax assessments should have been reduced by the value of its constructional defects, Olen Residential appealed its assessment to respondent the Clark County Board of Equalization. At the County Board hearing, the County Board raised the capitalization rate on 7 of the 16 apartments. The County Board’s decision was based upon the capitalization rate of similar properties and was unrelated to the alleged constructional defects in the apartment complexes. Still dissatisfied with its 2004-2005 tax assessment, Olen Residential appealed the County Board’s decision to the State Board of Equalization. Meanwhile, Olen Residential received a $112 million judgment in a constructional defect action that it had instituted with respect to some of its apartments. Olen Residential introduced that judgment in its appeal to the State Board. Based upon the judgment and other testimony, the State Board raised the capitalization rate by 2.25 percent on all 16 apartments to account for their constructional defects. In so doing, the State Board refused to adopt Olen Residential’s suggested approach for accounting for its properties’ constructional defects— simply deducting the amount of its constructional defects from the value of its apartment complexes.
 

 Unsatisfied with the State Board’s decision, Olen Residential petitioned the district court for judicial review. The district court denied Olen Residential’s petition, concluding that Olen Residential’s suggested approach was not a proper method for accounting for constructional defects and, thus, affirmed the State Board’s decision. This appeal followed.
 

 DISCUSSION
 

 In an appeal from a district court order denying a petition for judicial review of a State Board decision, this court presumes that the State Board’s decision is valid.
 
 [2]
 
 To overcome that presumption
 
 *838
 
 of validity, the taxpayer must demonstrate by clear and satisfactory evidence that the State Board’s valuation is unjust and inequitable.
 
 [3]
 
 To satisfy this requirement, a taxpayer must demonstrate ‘ ‘ ‘that the [Sjtate [Bjoard applied a fundamentally wrong principle, . . . refused to exercise its best judgment,’ ” or levied an excessively high assessment that necessarily implicated fraud and bad faith.
 
 [4]
 
 As regards the State Board’s determinations that are based on statutory construction, this court reviews those conclusions de novo.
 
 [5]
 

 On appeal, Olen Residential contends that the constructional defects in its apartment complexes were not properly accounted for in assessing its properties’ taxable values. That contention is principally a question of whether the income capitalization method for valuing property is an appropriate method for assessing the taxable value of income-generating property with constructional defects in its improvements. To address that question, we first consider Nevada’s property tax assessment scheme. Following that discussion, we will address whether Nevada’s tax assessment scheme provides a valuation method sufficient to assess Olen Residential’s properties. Because we conclude that it does, we will consider whether the appropriate valuation method was properly applied in this case.
 

 Nevada’s property tax assessment scheme
 

 In arguing that its properties’ constructional defects were not properly accounted for when the taxable values were assessed, Olen Residential argues that neither the enumerated valuation methods within Nevada’s statutory tax assessment scheme, nor the regulations promulgated thereto, provide a method sufficient to assess their properties’ values. To determine whether Nevada law currently provides an appropriate method for valuing properties affected by constructional defects, we consider Nevada’s current tax assessment scheme.
 

 Article 10, Section 1 of the Nevada Constitution generally directs the Legislature to provide laws for the assessment and taxation of real property. The Legislature accordingly enacted NRS 361.227 for assessing real property’s taxable value and assigned
 
 *839
 
 county assessors the task of determining the taxable value for property located within their designated counties.
 
 [6]
 
 NRS 361.227(l)(a) essentially directs the county assessor to appraise two components of property in determining its taxable value: the land and any improvements on the land. The land is assessed in light of its uses, given any improvements on it.
 
 [7]
 
 With respect to appraising improvements on the land, NRS 361.227(l)(b) directs the assessor to use the cost approach, providing that the value of any improvements must be appraised by subtracting any applicable obsolescence, or “impairment to property,”
 
 [8]
 
 and other depreciation from the cost of replacing the improvements.
 

 After the assessor determines the taxable value of the real property as set forth in NRS 361.227(1) — by appraising the land and any improvements on it — the assessor must ensure that the property’s taxable value does not exceed its “full cash value.”
 
 [9]
 
 To determine whether a property’s taxable value, as determined under NRS 361.227(1), exceeds its full cash value, NRS 361.227(5) provides three alternative methods that the assessor “may” utilize: (1) a comparable sales analysis; (2) a summation of the values of the land and any improvements; and (3) “[cjapitalization of the fair economic income expectancy or fair economic rent, or an analysis of the discounted cash flow.” If the real property’s value, calculated using one of those methods, is less than the real property’s taxable value calculated under NRS 361.227(1), the assessor must reduce the property’s taxable value accordingly, so that it does not exceed the property’s full cash value.
 
 [10]
 
 In addition to being used to determine full cash value, these methods may also be used to determine whether an improvement’s replacement cost is subject to depreciation for obsolescence under NRS 361.227(1).
 
 [11]
 

 
 *840
 

 Nevada’s property tax assessment scheme recognizes the method used to assess Olen Residential’s property
 

 As an initial matter, Olen Residential asserts that the State Board’s decision is unjust and inequitable because it relies on an improper assessment. In particular, Olen Residential apparently contends, contradictorily, both that the Assessor did not first determine altogether the taxable values of its properties by appraising the lands and then appraising the improvements on them, as required by NRS 361.227(1), and that in making this appraisal, the Assessor failed to “subtract[ ] from the cost of replacement of the improvements all applicable . . . obsolescence.”
 

 But the record demonstrates that the Assessor appraised each parcel of land and its improvements, as required by NRS 361.227(1). Although the Assessor acknowledged that he did not subtract any obsolescence from the value derived under NRS 361.227(1), he testified that he did not do so because it was not clear that any such reduction was necessary given that no obsolescence was demonstrated or readily observable. In light of this testimony, an assessment was made under NRS 361.227(1), even though the Assessor did not reduce that amount for obsolescence. This conclusion leads to Olen Residential’s next argument that, at least once the district court entered a judgment in Olen Residential’s constructional defect action, the judgment represented amounts that should have been subtracted under NRS 361.227(1) as obsolescence.
 

 Olen Residential argues that constructional defects are necessarily obsolescence that must be accounted for by reducing the apartments’ full cash value by simply subtracting the applicable obsolescence. We disagree.
 

 Obsolescence can be either functional or economical. Obsolescence is economic if it “results from external economic factors, such as decreased demand or changed governmental regulations,” while obsolescence is functional if it “results either from inherent deficiencies in the property such as inadequate equipment or design, or from improvements in the property since its use began.”
 
 [12]
 

 With respect to commercial property that generates income, the Indiana Tax Court has recognized that a “loss of value usually means a decrease in the property’s income-generating ability.”
 
 [13]
 
 
 *841
 
 Thus, functional obsolescence must result in detriment to the property’s income-producing capabilities.
 
 [14]
 
 If the taxpayer properly demonstrates that the alleged obsolescence decreased the income that the property generates, the assessor must then “convert the actual loss of value . . . into a percentage reduction and apply it against the improvement’s overall true tax value.”
 
 [15]
 
 Thus, in commercial properties, even obsolescence depreciation can be seen as correlating to the property’s income-producing capabilities.
 

 Indeed, Nevada tax law appears to recognize, as the Indiana Tax Court has, that with respect to income-producing property, a defective condition on any improvement must affect the property’s income-generating ability before it constitutes deductible obsolescence.
 
 [16]
 
 Specifically, NRS 361.227(5) provides that an assessor may use the income capitalization approach to determine “whether obsolescence is a factor in valuation.” If a property’s full cash value using the capitalized income method is substantially less than the taxable value assessed without depreciation under NRS 361.227(1), this indicates that a reduction for obsolescence is warranted.
 
 [17]
 
 In this way, the income that a property generates is used to determine whether the condition of any improvement on the property is decreasing the income that the property would otherwise generate.
 

 Thus, constructional defects could impair a property’s function so as to constitute obsolescence, if a connection between the purported obsolescence and an actual loss in property value is shown. Here, however, Olen Residential failed to make any specific connection between its properties’ constructional defects and the income that its properties generate, or are likely to generate in the future. It instead argues that its properties’ constructional defect judgments should merely be deducted from the cost to replace the improvements, without considering whether the constructional defects in any way impact the amount of income its properties generate. Olen Residential’s proposed method ignores that its proper
 
 *842
 
 ties generate income, which necessarily affects the properties’ value.
 

 As set forth in NRS 361.227(5), the Assessor was permitted to determine whether obsolescence is a factor in his valuation under the income capitalization method. Thus, as the Assessor applied the capitalization method to properties with constructional defects, the Assessor properly followed the statutory steps in appraising the properties’ values under NRS 361.227(1).
 

 The properties’ full cash value was properly determined under an income capitalization approach
 

 Having recognized that the Assessor utilized an appropriate method under Nevada’s tax assessment scheme for assessing the taxable value of income-producing property with constructional defects — the income capitalization method — we turn to the narrower issue of whether that method was properly applied in this case.
 

 As discussed, the Assessor determined the taxable value of Olen Residential’s properties under NRS 361.227(1) and attempted to ensure that the properties’ taxable value did not exceed their full cash value by utilizing one of the methods set forth in NRS 361.227(5). The type of real property at issue and the market data generally available will determine whether the Assessor’s appraised taxable value exceeds the real property’s full cash value.
 

 Olen Residential, as indicated, contends that none of the three methods enumerated in NRS 361.227(5) are appropriate for determining whether the Assessor’s appraised taxable value exceeds the real property’s full cash value because they do not adequately account for the properties’ constructional defects. Respondents assert that since Olen Residential’s properties generate income, the income capitalization approach most accurately determines their fall cash value, including consideration of the constructional defects.
 

 When, as in this case, the property produces an income, the income capitalization approach is usually the best method. Indeed, several jurisdictions have recognized that capitalizing income produced by real property most accurately determines the property’s fall cash values,
 
 [18]
 
 and although this court has not unequivocally
 
 *843
 
 stated that income capitalization is the best approach to assessing income-producing property, this court has consistently discussed the income capitalization approach with respect to valuing such property.
 
 [19]
 

 The income capitalization approach to determine a property’s full cash value
 

 The income capitalization approach to valuing real property is based on two factors: (1) the annual income that a buyer expects to receive from the property, usually in the form of rents; and (2) the rate at which a buyer could expect a return on his investment.
 
 [20]
 
 Thus, this method takes into account both the property’s income-generating potential and the time-value of money in determining the property’s current value. The price that a buyer is willing to pay for the income-producing real property, or the property’s full cash value, is determined based on the net operating income that the property will likely yield in a year’s time and the property’s capitalization rate.
 
 [21]
 

 A property’s net operating income is calculated by taking its effective gross income and then subtracting expenses, including maintenance and upkeep.
 
 [22]
 
 A property’s capitalization rate is the percentage rate at which the buyer expects to recoup his or her investment in the property, or the property’s expected rate of return.
 
 [23]
 
 
 *844
 
 A buyer’s expected rate of return is a function of numerous external and internal factors, including the property’s age, kind, condition, depreciation, location, market conditions, and any other risk associated with investing in the property.
 
 [24]
 

 Once an assessor determines a property’s net operating income and its capitalization rate, the property’s income capitalization value is calculated by dividing its net operating income by its capitalization rate.
 
 [25]
 
 For instance, this approach figures that a buyer who expected a 10 percent rate of return would be willing to pay $500,000 for property that generates a $50,000 net operating income ($50,000/. 10 = $500,000). Thus, a small change in a property’s capitalization rate, based on any combination of factors, significantly impacts the property’s overall full cash value.
 
 [26]
 

 The income capitalization method as applied to Olen Residential’s properties
 

 Here, because the properties at issue are income-producing properties, the Assessor correctly compared the properties’ full cash values with their cost-based taxable values under NRS 361.227(5)(c), utilizing the income capitalization approach. Olen Residential contends, however, that the income capitalization approach inadequately takes into account its properties’ constructional defects, asserting that the defects render any present determination regarding the value of its properties’ future income too speculative because those defects will cause the properties’ future income to decrease. But the income capitalization approach takes into account the effect of property improvement conditions, including constructional defects, on a property’s taxable value through adjustments to the capitalization rate.
 

 In this case, although the Assessor acknowledged that he did not account for any constructional defects when considering the
 
 *845
 
 properties’ condition to derive a capitalization rate,
 
 [27]
 
 any defects in the properties were speculative. Since Olen Residential’s constructional defect litigation was ongoing, the State Board properly accounted for the constructional defects in light of Olen Residential’s subsequent constructional defect by increasing the Assessor’s capitalization rate by 2.25 percent. Raising Olen Residential’s income-producing properties’ capitalization rates to reflect any constructional defects was proper since, as noted, an income-producing property’s capitalization rate is determined by, among other factors, the property’s condition, depreciation, and investment risk, which conceivably include any constructional defects in the property’s improvements. Further, because an income-producing property’s value is calculated by dividing its net operating income by its capitalization rate, by increasing a property’s capitalization rate, the derived taxable value necessarily decreases.
 

 Nevertheless, Olen Residential asserts that the Assessor should have used a different method for establishing the full cash value of its properties — simply deducting the amount of the constructional defect judgments, at least to the extent that the judgments reflect remediation costs, from the replacement cost of the improvements on the land.
 
 [28]
 
 That argument appears related to NRS 361.227(l)(b)’s requirement that the Assessor must value any improvements on land by subtracting obsolescence from the cost to replace the improvements.
 

 But Olen Residential’s argument fails, as the following example illustrates. The Assessor valued Desert Club, one of Olen Residential’s apartment complexes, at approximately $36 million, without considering any constructional defects. Under Olen Residen
 
 *846
 
 tial’s argument, the Desert Club’s approximately $28 million constructional defect judgment must be deducted from the Assessor’s derived value, resulting in an approximately $8 million taxable value for Desert Club. Put differently, according to Olen Residential, a buyer would not pay more than $8 million for Desert Club. However, at least in the recent past, Desert Club has generated approximately $3 million annually in net operating income, notwithstanding its defects. Because Desert Club has continued to generate substantial income despite its constructional defects, a buyer likely would be willing to invest more than $8 million in the purchase of Desert Club in light of the substantial return on its investment.
 
 [29]
 
 Moreover, even if constructional defects increasingly affect Desert Club’s income production over time, such changes can be accounted for in Desert Club’s capitalization rate and its net operating income under the income capitalization approach to valuing real property. Indeed, the State Board attempted to account for Olen Residential’s constructional defects by adding 2.25 percent to the Assessor’s capitalization rate. In so doing, the State Board effectively decreased the assessed value of Olen Residential’s property specifically to account for the properties’ constructional defects. Thus, because the State Board’s use of the income capitalization approach to determine the full cash value of Olen Residential’s properties accounts for the properties’ constructional defects, Olen Residential failed to demonstrate that the State Board applied a fundamentally wrong principle.
 
 [30]
 

 The State Board exercised its best judgment in deriving the capitalization rate adjustment
 

 Olen Residential argues that the State Board failed to exercise its best judgment in deriving its 2.25 percent capitalization rate adjustment. But, as the State Board’s decision is presumed valid,
 
 [31]
 
 it is Olen Residential’s burden to demonstrate that the State Board did not exercise its best judgment,
 
 [32]
 
 which it failed to do. Olen Residential’s argument is belied by record evidence demonstrating that, in deriving its 2.25 percent capitalization rate adjustment, the
 
 *847
 
 State Board indeed exercised its best judgment by (1) discussing at length the appropriate capitalization rate adjustment, (2) reviewing the district court constructional defect judgment, and (3) reviewing the Assessor’s income and expense statements. Accordingly, we conclude that Olen Residential failed to show that the State Board did not exercise its best judgment in selecting a 2.25 percent capitalization rate increase applicable to each property.
 

 CONCLUSION
 

 We conclude that Olen Residential failed to demonstrate by clear and satisfactory evidence that the State Board’s valuation was unjust and inequitable and, thus, failed to overcome the presumption of the decision’s validity. Olen Residential failed to make this showing because the State Board’s decision to raise the capitalization rates on all 16 properties by 2.25 percent was not a fundamentally wrong principle and properly accounted for the constructional defects in Olen Residential’s income-producing properties. We further conclude that Olen Residential failed to provide sufficient evidence indicating that the State Board did not exercise its best judgment in selecting a 2.25 percent across-the-board capitalization rate increase. Accordingly we affirm the district court’s order denying judicial review of the State Board of Equalization’s decision.
 

 [1]
 

 See
 
 NRS 361.227(5) (providing that a property’s assessed value shall not exceed its full cash value).
 

 [2]
 

 Imperial Palace v. State, Dep’t Taxation,
 
 108 Nev. 1060, 1066, 843 P.2d 813, 817 (1992).
 

 [3]
 

 NRS 361.430.
 

 [4]
 

 State, Bd. of Equalization v. Bakst,
 
 122 Nev. 1403, 1409, 148 P.3d 717, 721 (2006) (first and second alterations in original) (quoting
 
 Imperial Palace,
 
 108 Nev. at 1066, 843 P.2d at 817).
 

 [5]
 

 See id.
 
 at 1409, 148 P.3d at 721. Respondents challenge the district court’s consideration of certain documents provided by Olen Residential, which the State Board did not have an opportunity to review.
 
 See Beavers v. State, Dep't of Mtr. Vehicles,
 
 109 Nev. 435, 438, 851 P.2d 432, 434 (1993) (providing that a court reviewing an administrative decision is limited to the record before the
 
 *839
 
 administrative body). But the challenged documents are not included in the record. Thus, it appears that this court cannot determine whether the alleged documents fit within an exception to the general rule that a court reviewing an administrative decision is limited to the record before the administrative body with respect to documents supporting allegations of procedural irregularities in State Board proceedings.
 
 See also
 
 NRS 361.420(5).
 

 [6]
 

 See
 
 NRS 361.260;
 
 Bakst,
 
 122 Nev. at 1410, 148 P.3d at 722.
 

 [7]
 

 NRS 361.227.
 

 [8]
 

 NAC 361.116.
 

 [9]
 

 See
 
 NRS 361.025 (defining “ ‘ [f]ull cash value’ ” as “the most probable price which property would bring in a competitive and open market under all conditions requisite to a fair sale”);
 
 see also
 
 NRS 361.227(5) (stating that “[t]he computed taxable value of property must not exceed its full cash value”); NAC 361.131 (providing procedure for reduction of taxable value if it exceeds full cash value).
 

 [10]
 

 Bakst,
 
 122 Nev. at 1412, 148 P.3d at 723;
 
 see
 
 NRS 361.227(5);
 
 see also
 
 NAC 361.131.
 

 [11]
 

 See
 
 NRS 361.227(5).
 

 [12]
 

 Black’s Law Dictionary
 
 1107 (8th ed. 2004).
 

 [13]
 

 Hometowne Associates, L.P. v. Maley,
 
 839 N.E.2d 269, 274 (Ind. Tax Ct. 2005);
 
 cf.
 
 NRS 361.227(5) (providing that an assessor may determine the amount of an obsolescence adjustment using the income capitalization approach to determining a property’s market value).
 

 [14]
 

 Hometowne Associates,
 
 839 N.E.2d at 274.
 

 [15]
 

 ld.
 
 We note that Indiana’s “true tax value” scheme is similar to NRS 361.227(1), in that it estimates property value by subtracting obsolescence from replacement value pursuant to a statutory formula.
 
 See
 
 NRS 361.227(1);
 
 Hometowne Associates,
 
 839 N.E.2d at 273.
 

 [16]
 

 See
 
 NRS 361.227(5);
 
 Hometowne Associates,
 
 839 N.E.2d at 274.
 

 [17]
 

 Imperial Palace
 
 v.
 
 State, Dep’t Taxation,
 
 108 Nev. 1060, 1063, 843 P.2d 813, 816 (1992) (“ ‘The computed taxable value of any property must not exceed its full cash value.’ ” (quoting NRS 361.227(5))).
 

 [18]
 

 See, e.g., Tatten Partners
 
 v.
 
 New Castle County,
 
 642 A.2d 1251, 1260 (Del. Super. Ct. 1993);
 
 Southern Mn. Beet v. Cty. of Renville,
 
 737 N.W.2d 545, 555 (Minn. 2007) (briefly recognizing the income capitalization approach);
 
 Snider v. Casino Aztar/Aztar Mo Gaming Corp,
 
 156 S.W.3d 341, 347 (Mo. 2005) (recognizing the income approach as the most appropriate method of valuing investment-type properties, such as apartment buildings, but not applying the approach to the case);
 
 Midlantic Operating Admin,
 
 v.
 
 West Caldwell Twp.,
 
 20 N.J. Tax 446, 451 (2002) (determining that certain commercial property’s taxable value was most accurately assessed using the income capitalization approach);
 
 Merrick Holding Corp. v. Board of Assessors,
 
 382 N.E.2d 1341, 1342-43 (N.Y. 1978) (preferring the income capitalization approach).
 

 [19]
 

 See, e.g., Nat’l Adv. Co. v. State, Dep’t of Transp.,
 
 116 Nev. 107, 114, 993 P.2d 62, 67 (2000) (discussing the income capitalization approach in the context of property that generated advertising income from billboards);
 
 Nevada Tax Comm’n v. Southwest Gas Corp.,
 
 88 Nev. 309, 312, 497 P.2d 308, 310 (1972) (recognizing that the Nevada Tax Commission’s determination not to assess gas pipeline property using the income capitalization method was a reasonable exercise of the Commission’s judgment when the property produced no income in the year at issue);
 
 Eikelberger
 
 v.
 
 State ex rel. Dep’t Highways,
 
 83 Nev. 306, 309, 429 P.2d 555, 557 (1967) (recognizing that, for eminent domain purposes, the market value of property that generated income through the operation of a trailer park may be determined using the income capitalization approach; however, the expert witness was not allowed to testify regarding the market value of the property at issue).
 

 [20]
 

 See Soo Line R. Co. v. Wis. Dept. of Rev.,
 
 278 N.W.2d 487, 492 (Wis. Ct. App. 1979) (“The theory of the capitalized income approach to value is that the greater the net income produced by an asset, the more a willing buyer will pay for the asset.”);
 
 see also
 
 William L. Ventolo, Jr. & Martha R. Williams,
 
 Fundamentals of Real Estate Appraisal
 
 247 (8th ed. 2001).
 

 [21]
 

 Soo Line R.
 
 Co., 278 N.W.2d at 492; Ventolo, Jr. & Williams,
 
 supra
 
 note 20, at 247.
 

 [22]
 

 See Hometowne Associates, L.P. v. Maley,
 
 839 N.E.2d 269, 275 (Ind. Tax Ct. 2005);
 
 see also
 
 Ventolo, Jr. & Williams,
 
 supra
 
 note 20, at 247.
 

 [23]
 

 See Eikelberger,
 
 83 Nev. at 309, 429 P.2d at 557.
 

 [24]
 

 See Olen Commercial Realty v. County of Orange,
 
 24 Cal. Rptr. 3d 609, 613 (Ct. App. 2005);
 
 Kurnick v. State,
 
 389 N.Y.S.2d 203, 204 (App. Div. 1976);
 
 Appalachian Power Company v. Anderson,
 
 187 S.E.2d 148, 154 (Va. 1972).
 

 [25]
 

 See Hometowne Associates,
 
 839 N.E.2d at 275;
 
 Soo Line R. Co.,
 
 278 N.W.2d at 492 (recognizing that the income capitalization formula for valuing property “can be described as follows: V = I/R, where V is value, I is anticipated income, and R is the percentage rate of return the investor demands on his capital”);
 
 see also
 
 Ventolo, Jr. & Williams,
 
 supra
 
 note 20, at 247.
 

 [26]
 

 See
 
 Ventolo, Jr. & Williams,
 
 supra
 
 note 20, at 248;
 
 see also Eikelberger,
 
 83 Nev. at 309, 429 P.2d at 557.
 

 [27]
 

 Olen Residential argues that the Assessor improperly relied on the sale of an apartment complex known as Chapel Hill in deriving a capitalization rate for some of its properties. According to Olen Residential, the Chapel Hill sale was not an appropriate sale for comparison purposes because the sale transaction was not conducted at arm’s length. To support its argument, Olen Residential notes that at some point the resident agents for the companies involved in the transaction shared the same office building. We conclude that this argument lacks merit for three reasons. First, it appears that the resident agents had different addresses at the time of the sale. Second, the record demonstrates that the Chapel Hill sale was only one of several apartment complex sales that the Assessor considered. Third, Olen Residential did not raise this argument at the County Board or State Board and thus we need not address it because it is raised for the first time on appeal.
 
 See Old Aztec Mine, Inc. v. Brown,
 
 97 Nev. 49, 52, 623 P.2d 981, 983 (1981) (noting that “[a] point not urged in the [district] court ... is deemed to have been waived and will not be considered on appeal”).
 

 [28]
 

 A similar approach to assessing property is set forth in NAC 361.1234, which provides guidelines for assessing the full cash value of contaminated property, which is defined as property affected by a hazardous substance incorporated in any improvements or released on the land.
 
 See
 
 NAC 361.123.
 

 [29]
 

 Notably, Olen Residential’s proposed taxable valuation results in a 27 percent capitalization rate.
 

 [30]
 

 We note that our conclusions do not leave Olen Residential remediless for its constructional defects. Instead, as noted in oral argument, the Assessor conducts annual assessments and thus, if Olen Residential’s income declines or its costs of repair rise, it may seek a downward adjustment based upon its evidenced costs.
 

 [31]
 

 See Imperial Palace
 
 v.
 
 State, Dep’t Taxation,
 
 108 Nev. 1060, 1066, 843 P.2d 813, 817 (1992).
 

 [32]
 

 See State, Bd. of Equalization v. Bakst,
 
 122 Nev. 1403, 1408-09, 148 P.3d 717, 721 (2006).