Present:   Carrico, C.J., Compton,[1] Lacy, Hassell, Keenan, Koontz, and Kinser, JJ.

REVOCOR CORPORATION

OPINION BY JUSTICE LEROY R. HASSELL, SR.
v.  Record No. 990830          March 3, 2000

COMMONWEALTH TRANSPORTATION
COMMISSIONER OF VIRGINIA

FROM THE CIRCUIT COURT OF YORK COUNTY
J. Warren Stephens, Judge Designate

In this appeal from a judgment entered in a condemnation proceeding, we consider whether the circuit court properly excluded evidence of adjustment costs as a factor to be considered by the commissioners when determining damage to the residue of the property.

The Commonwealth Transportation Commissioner (the Commissioner) made a bona fide, but ineffectual, effort to purchase approximately 8.55 acres of land in York County that was necessary for the construction, reconstruction, alteration, maintenance, and repair of Interstate Highway 64. This land was part of two parcels owned by Revocor Corporation:  Parcel 023, which consisted of .4 of an acre and Parcel 003, which consisted of 55.5 acres.

At a condemnation trial, Revocor sought $484,725 for the value of the property taken and $453,826 for the damage to the

_____

[1] Justice Compton participated in the hearing and decision of this case prior to the effective date of his retirement on February 2, 2000.

residue. The circuit court excluded Revocor's evidence of adjustment costs allegedly necessary to develop the property as a result of the taking. The condemnation commissioners returned a report valuing the land taken at $403,000 and damage to the residue at $37,500. Revocor filed exceptions to the commissioners' report and requested a new trial. The circuit court denied Revocor's request and entered an order confirming the commissioners' report. Revocor appeals.

The approximately 56-acre parcel is near the intersection of Interstate 64 and Route 143. The property is zoned for commercial use, and the litigants agree that at the time of the taking, the highest and best use of the property was for commercial development.

Revocor's property consisted of land situated at several elevations ranging from highland to marsh. Before the taking, the eastern portion of the property, which was at a high elevation, was encumbered by several easements, including a Virginia Natural Gas (VNG) pipeline easement.[2] The remainder

---

[2] Pursuant to the terms of the easement, Revocor, its successors and assigns, "may use the permanent right of way for any purpose not inconsistent with the rights hereby acquired including, but not limited to the right to construct, operate and maintain passways, roads, streets, railroad tracks, telephone, electric or other utility lines . . . across the permanent right of way, in such manner that the angle between the center line thereof and the center line of the permanent right of way shall be not less than forty-five (45) degrees, provided that such use does not interfere with

of Revocor's property, which was considered the most desirable portion of the land for commercial development purposes, included a 12-acre lake.

In 1989, Revocor submitted a site plan for development of the land to York County. At that time, the property enjoyed a zoning classification which permitted residential uses, and Revocor sought to develop the property for residential purposes. The site plan for development, which was approved by the County, contained a proposed road for the property. The road was never constructed, and in 1995, the zoning classification of the property was changed from multi-family residential to limited business.

The Commissioner made a motion in limine to exclude evidence of damage to Revocor's property allegedly resulting from the relocation of a road shown on the 1989 plat for residential development. The circuit court ruled that the exhibit of the preliminary unrecorded plat could not be used or referred to during the trial. The Commissioner made another motion in limine to exclude evidence regarding "the alleged cost of relocating the roadway as a cost of adjusting the remaining property as a result of the take" because the evidence would be "speculative," "irrelevant and immaterial."

---

or endanger the construction, operation or maintenance of [VNG's] facilities."

The circuit court granted the motion stating that it "[was] not going to permit any consideration of relocation of any road because there is no road on the property at the time of the take."

Revocor sought to introduce at trial the testimony of Fred Watkins, a licensed professional engineer. According to Revocor's proffer, Watkins was retained to assess the impact of the taking upon Revocor's remaining property and upon the property's potential use and development. Watkins opined that "development potential of the residue was dramatically reduced by the taking, and that it will be very expensive to adjust the residue to the new conditions caused by the taking. The changed configuration and topography of the residual parcel seriously impede its use and development."

Watkins would have also testified as follows. "The access into Revocor's property from the public road remains the same after the take as it was before the take. However, once into the interior of the property, the topography and configuration of the post-take parcel are such that the interior roadway serving the highland along the lake is now required to pass through a steep marshy area south and east of the lake. Prior to the take, the interior roadbed was able to utilize the topography so as to maximize the use of the land, and minimize the effect of the steep and marshy area. The

4

effect of the taking renders the development of the residual parcel, and the utilization of land otherwise available, much more difficult and expensive.  It also substantially reduces the proportional amount of usable land in the residual parcel, because of the necessity to construct retaining walls in some areas."

Watkins stated that it was his "opinion that in addition to the reduction in usable land in the residual parcel, the cost of developing the residual parcel has increased by $377,130.68 (exclusive of engineering costs) solely because of the necessity to relocate the interior roadway through the marshy portion of the property which has steep side slopes. This increased expense includes bringing in additional fill material, and the construction of retaining walls, neither of which were necessary prior to the taking."

Even though the circuit court refused to permit Watkins to testify, the court permitted Revocor's appraiser, Howard Clayton, to testify that before the taking, Revocor's land enjoyed a "favorable topography."  Clayton stated that access to the most desirable portion of the property for development purposes after the taking would be "a mountain of a problem" because the terrain that would have to be traversed by a road "is wet and in a bowl."  Clayton also testified that in arriving at his conclusions, he consulted with Watkins.

Clayton opined that the total value of the taking was $484,725 and that the damage to the residue was $453,826.

Henry G. Warren, Jr., an appraiser employed by the Virginia Department of Transportation, testified that the value of the taking was $355,884, and there was no damage to the residue. John C. Harry, a real estate appraiser who also testified on behalf of the Commissioner, testified that the taking was valued at $370,000 and that there was no damage to the residue.

Revocor argues that the circuit court erred in refusing to permit Watkins' proffered testimony that as a result of the taking, the configuration and topography of the land was dramatically changed and that such changes seriously impeded the use and development of the land which in turn reduced the amount of usable land in the residue. Continuing, Revocor asserts that Watkins would have testified that prior to the taking, Revocor easily could have gained access to its interior lakefront property along the eastern portion of the property without violating the VNG easement. Watkins would have explained the physical difficulties that Revocor would encounter in creating a road through the steep and marshy area which was necessitated as a result of the taking.

Responding, the Commissioner argues that Watkins' testimony was speculative evidence that was inadmissible in an

eminent domain trial.  The Commissioner asserts that "the costs allegedly necessitated to relocate a road if [Revocor] develops its property in the future are remote and speculative and that the [circuit] court properly excluded the engineer's testimony concerning those costs."

In Lynch v. Commonwealth Transp. Comm'r, 247 Va. 388, 391, 442 S.E.2d 388, 389-90 (1994), we discussed well-established principles governing the taking of property in a condemnation proceeding:

> "The measure of compensation for the property taken is the fair market value of the property at the time of the taking.  In determining fair market value, consideration is given to the property's adaptability and suitability for any legitimate purpose in light of conditions and circumstances that exist at the time of the take or that reasonably may be expected in the near future.  The test of damages to the land remaining after the taking is the difference in the residue's value immediately before and immediately after the taking. In determining such damages, consideration may be given to every circumstance, present or future, that affects the residue's value at the time of the take. Remote or speculative advantages and disadvantages, however, are not to be considered."

Accord Wammco, Inc. v. Commonwealth Transp. Comm'r, 251 Va. 132, 137, 465 S.E.2d 584, 586 (1996); Appalachian Elec. Power Co. v. Gorman, 191 Va. 344, 353, 61 S.E.2d 33, 37-38 (1950).

We stated in Dressler v. City of Covington, 208 Va. 520, 522, 158 S.E.2d 660, 662 (1968), that it "is well settled that in determining the diminution of the market value of the land

7

not taken or the damages thereto, it is proper to consider the expense made necessary by reason of the improvement in adjusting the property to the changed conditions brought about by the taking."  Such increased development costs, commonly referred to as adjustment costs, are necessary to adjust the property to the changed conditions caused by the taking. Adjustment costs are relevant when determining any diminution in the market value of the residue as a result of the taking. Id.  Such costs, however, are "not the measure of damages and cannot be recovered specifically.  In other words, evidence of the actual cost of necessary improvements is admissible as a factor of evaluation, though not as a measure of damages." Id.  The measure of damages to the residue is the difference in the value before and immediately after the taking, less any enhancement that resulted from the taking.  Wammco, 251 Va. at 137, 465 S.E.2d at 587; State Highway & Transp. Comm'r v. Parr, 217 Va. 522, 524, 230 S.E.2d 253, 255 (1976). Additionally, evidence of adjustment costs is inadmissible if such costs are based upon remote or speculative factors. Lynch, 247 Va. at 391, 442 S.E.2d at 390.

In Wammco, we considered whether a circuit court properly excluded evidence of adjustment costs as a factor of evaluation when ascertaining the damage to the residue of certain property.  There, the Commonwealth Transportation

Commissioner filed a petition in condemnation and requested that the circuit court appoint commissioners to determine just compensation due to a landowner as a result of a taking. The Commissioner had taken 17.6 acres of land in the City of Chesapeake for the construction of a portion of Interstate Highway 664. This tract of land was part of a larger tract consisting of 314 acres. Before construction of the interstate, the 314-acre parcel was bisected by Gum Road, a road which was then a segment of the only continuous north-south route through the Western Branch area of Chesapeake. Wammco, 251 Va. at 134, 465 S.E.2d at 584-85.

When the interstate was constructed through the property, Gum Road was severed in half. A cul-de-sac was created at the end of Gum Road next to the highway, eliminating any access to the interstate. That portion of the landowner's property west of Gum Road was zoned for industrial use at the time of the taking. The portion of the property east of Gum Road was zoned for agricultural use at the time of the taking, but was later rezoned for residential development. Id. at 134-35, 465 S.E.2d at 585.

The parties agreed that the highest and best use of the eastern portion of the property was for residential development. The portion of the property west of Gum Road enjoyed an industrial zoning classification at the time of the

9

taking. A civil engineer testified that before the taking, Gum Road provided sufficient access to the property to support development in accordance with its highest and best use. However, when the road was severed by the taking, access to the property was so severely restricted that the western portion was rendered unsuitable for industrial use. Id. at 135, 465 S.E.2d at 585.

Before trial, the transportation commissioner made a motion in limine to exclude any evidence of adjustment costs allegedly necessitated by the taking because such testimony would have been speculative. The landowner had made a proffer that as a result of the taking, both on-site and off-site improvements would be necessary to develop the property in accordance with its highest and best use, that additional land and rights-of-way would have to be acquired, and that the off-site road network to the residue would have to be improved in order to provide sufficient road access to develop the western portion of the property for industrial use. Additionally, the landowner presented evidence that an additional road would have to be built off the property in order for the eastern portion of the residue to be developed in accordance with the landowner's post-taking development plans. Id. at 135-36, 465 S.E.2d at 585-86.

We held that the circuit court properly excluded the landowner's proffered evidence because the development of the residue was contingent upon the improvement of off-site roads in the vicinity of the residue and the acquisition of property owned by others.  We also noted that the landowner's evidence showed that the development of the property was contingent upon future acts beyond the landowner's control which were remote and speculative.  Id. at 138, 465 S.E.2d at 587.

Here, unlike the landowner in Wammco who was unable to develop its property unless it acquired the adjacent properties of others, Revocor, according to its proffer, would have been able to construct a road through the steep and marshy areas of its residue provided it was able to do so in accordance with the terms of the VNG easement.  Also, unlike the property owner in Wammco, Revocor's ability to relocate a road was not predicated upon speculative factors such as the acquisition of rights-of-way from others.  We hold that in determining the damage to the residue, Revocor was entitled to present as a factor of evaluation the actual costs of relocation of a road to the more desirable portions of its property.  Therefore, the circuit court erred in excluding the proffered evidence.

The Commissioner argues that even if the circuit court erred in excluding the proffered evidence, such error was

11

harmless because Clayton testified that he had consulted with an engineer and that this consultation led him to conclude that after the taking, Revocor would be required to construct a road in a less favorable location.  We disagree.

Clayton's testimony simply failed to encompass the facts and opinions that were contained in Watkins' proffered testimony.  Furthermore, Clayton, unlike Watkins who is a licensed professional engineer, could not render opinions about the construction of retaining walls and additional fill materials that might be necessary to relocate the roadway through the marshy portion of Revocor's property.

Accordingly, we will reverse the judgment of the circuit court and remand this proceeding for a new trial.

<u>Reversed and remanded</u>.