STATE HIGHWAY AND TRANSPORTATION COMMISSIONER OF
VIRGINIA

V.

LANIER FARM, INC.

Record No. 840566

June 12, 1987

Present: Carrico, C.J., Cochran,* Poff, Compton, Stephenson, Russell, and Thomas, JJ.

---

* Justice Cochran participated in the hearing of this case prior to the effective date of his retirement on April 20, 1987, and in the decision of this case subsequent to that date.

*Todd E. LePage, Assistant Attorney General (Gerald L. Baliles, Attorney General; Walter A. McFarlane, Deputy Attorney General; Walter H. Ohar, Assistant Attorney General; R. Morgan Armstrong; Armstrong & Armstrong,* on brief), for appellant.

*David B. Worthy (Stone & Worthy, P.C.,* on brief), for appellee.

RUSSELL, J., delivered the opinion of the Court.

This appeal from a judgment in a highway condemnation case raises a question concerning the compensability of damages attributed to frustration of the owner's plans for development caused by speeding motorists on the highway.

Lanier Farm, Inc. (Lanier), has developed large tracts of land in and near the City of Martinsville since 1938. On June 1, 1982, Lanier still retained a 130-acre tract in the city which bordered on State Route 650 (Spruce Street). The tract was held for future development, but had been subdivided on paper into lots and streets by an unrecorded plat made in 1976. No streets or other improvements had actually been constructed in 1982.

The 1976 plat showed an entrance from Spruce Street into the 130-acre tract. The entrance was planned at a point where a grove of trees would make it aesthetically pleasing, but it was on a curved portion of Spruce Street which would afford a shorter "sight distance" for approaching motorists than the city normally required. Lanier's engineers, however, thought the "sight distance" sufficient because the curvature of the road forced motorists to stay within the 30 mile-per-hour speed limit. They therefore believed that the city officials would consider the planned entrance safe, and would approve it when submitted.

On June 1, 1982, the State Highway and Transportation Commissioner (the Commissioner) recorded a Certificate of Deposit acquiring a portion of Lanier's 130-acre tract for the purpose of straightening the curve on Spruce Street. The parties were unable to agree on compensation and a condemnation proceeding ensued. At trial, the parties agreed that the Commissioner's offer would be a just compensation for the two parcels of land taken, aggregating 1.07 acres. The dispute concerned the damages to the residue of the 130-acre tract resulting from the taking.

The Commissioner's appraiser opined that the damage to the residue would be $8,575, caused by a change of grade that would affect only 2.5 acres of the whole tract. Lanier's witnesses testified that the highway project would necessitate relocating the proposed entrance approximately 200 feet from its original location because the Commissioner's project had so straightened the curve on Spruce Street that motorists no longer adhered to the speed limit. The higher speeds, they contended, would cause the city officials of Martinsville to demand a much greater "sight distance" at the entrance than originally proposed. They testified that the relocated entrance would increase excavation costs by $139,560 and that the fair market value of the entire residue tract would suffer because the new entrance would be less attractive and would be located adjacent to a "blighted area."

The Commissioner's highway project had been completed when the condemnation case came to trial in December 1983. Lanier called as a witness a traffic sergeant with the Martinsville Police Department. Over the Commissioner's objection, the officer testified that since the highway improvements had been completed a substantial speeding problem existed on Spruce Street, although there had been no speeding problem before the curve was straightened. He said that traffic citations had been issued in that area for speeds ranging from 49 to 57 miles per hour, although the posted speed limit continued to be 30 miles per hour. The condemnation commissioners awarded the stipulated compensation for the taking and awarded Lanier $65,000 as damages to the residue. We awarded the Commissioner an appeal.

The Commissioner argues that the trial court erred in admitting evidence in support of Lanier's theory of damages for several reasons: (1) Lanier's contention that the officials of the City of Martinsville would ultimately require a relocation of the proposed entrance is, at best, remote and speculative; (2) even if such a change of entrance were to be required, damages resulting therefrom would flow from a valid exercise of the police power of the city and, thus, would not be compensable in an eminent domain proceeding; (3) frustration of the owner's future plans for development is not a compensable item of damages — they must be based on the change, if any, in the present fair market value of the residue caused by the taking, considering all its adaptations to general and special uses but not its prospective value based on future expenditures or improvements; and (4) the negligent or unlawful use of the highway by third parties is not a compensable element of damages in a condemnation case. We agree with each of the Commissioner's arguments.

Lanier's evidence, to the effect that it would be required to relocate its entrance because the officials of the City of Martinsville would no longer consider its "sight distance" adequate, was based upon speculation and should not have been admitted. Lanier's witnesses admitted that other entrances had been approved by the city which had lesser "sight distances" than that shown on Lanier's 1976 plat. They also admitted that the Commissioner's project, which straightened the curve on Spruce Street, had the effect of increasing, rather than decreasing, the "sight distance." No evidence was offered to remove the issue from the realm of speculation. We held, as early as *Tidewater R.*

*Co.* v. *Cowan*, 106 Va. 817, 822, 56 S.E. 819, 820 (1907), that damages to the residue resulting from a partial taking are those which flow directly from the taking, not those which are merely speculative. Because the case must be remanded, we will briefly discuss the Commissioner's remaining contentions.

■ Even if Lanier's evidence concerning the anticipated actions of the city officials had been clear and positive, the theory of damages it sought to prove was fallacious. There was no contention that the Commissioner's taking would deprive the residue tract of all rights of direct access to the highway; rather, Lanier sought to prove that the city would, in the interests of public safety, require an entrance less advantageous to the owner than that originally contemplated. Although a "complete extinguishment and termination of all the landowners' rights of direct access" to an abutting highway constitutes a compensable "taking" within the eminent domain clause of the Virginia Constitution, a mere partial reduction or limitation of an abutting landowner's rights of direct access, imposed by governmental authority in the interest of traffic control and public safety, constitutes a valid exercise of the police power and is not compensable in condemnation proceedings. *State Highway Comm'r* v. *Linsly*, 223 Va. 437, 442-43, 290 S.E.2d 834, 837-38 (1982); *Highway Commissioner* v. *Easley*, 215 Va. 197, 203-04, 207 S.E.2d 870, 875 (1974); *Highway Commissioner* v. *Howard*, 213 Va. 731, 732-33, 195 S.E.2d 880, 881 (1973); *Wood* v. *Richmond*, 148 Va. 400, 407, 138 S.E. 560, 562-63 (1927).

■ Under the facts and circumstances of this case, the frustration of the owner's plans for development or future use of the property is not in itself a compensable item of damages. Ordinarily, such frustration of plans, like loss of good will, loss of profits, and difficulty of relocating, is a loss personal to the owner, or to the business conducted on the land by the owner, not attributable to the land itself. The foregoing principle is implicit in our cases. In *Richmond & P.R. Co.* v. *Seaboard, & c., Co.*, 103 Va. 399, 407, 49 S.E. 512, 515 (1905), we said: "It is the present actual value of the land with all its adaptations to general and special uses, and not its prospective, or speculative, or possible value based upon future expenditures and improvements that is to be considered." In *Appalachian Pr. Co.* v. *Johnson*, 137 Va. 12, 26, 119 S.E. 253, 257 (1923), we said:

Where the property and property rights proposed to be taken have a present fair market value, that value, at the time of the taking, is the 'just compensation' to which the owner is entitled under the constitutional provisions on the subject, and is the measure of the award the commissioners should make therefor; and not the value after future development of the property, or in the vicinity of it, has been made.

(Citations omitted). *See also Appalachian Power Co.* v. *Anderson*, 212 Va. 705, 187 S.E.2d 148 (1972); *Cf. Appalachian Elec., etc., Co.* v. *Gorman*, 191 Va. 344, 356-57, 61 S.E.2d 33, 39 (1950) (recorded subdivision plat properly admitted to show best use of entire tract, but not to show damages added up lot by lot).

Finally, we have consistently adhered to the view that the eminent domain provisions in the Virginia Constitution have no application to tortious or unlawful conduct, whether by contractors engaged in constructing public improvements, *Ryan* v. *Davis*, 201 Va. 79, 83, 109 S.E.2d 409, 413 (1959), governmental agents, *Eriksen* v. *Anderson*, 195 Va. 655, 657-59, 79 S.E.2d 597, 598-600 (1954), or third parties who are strangers to the condemnation proceedings, *Highway Commissioner* v. *Crockett*, 203 Va. 796, 801, 127 S.E.2d 354, 358 (1962). In *Crockett*, we reversed a condemnation award of damages to a residue tract in part because the trial court had admitted evidence that since the completion of highway improvements on the land taken, motorists "raced through there" at "great speed," and that members of the owner's family had been involved in one collision and had narrowly averted others. *Id.* at 800, 127 S.E.2d at 357. Lanier argues that *Crockett* is distinguishable because there the claimed damages were personal, while here they are to the land. Our rationale for the holding in *Crockett*, however, was that danger caused by the unlawful use of the highway by irresponsible motorists did not constitute an element of damage flowing directly from the taking of the land, and the possibility of future injury from such conduct was too remote and speculative to be considered as affecting the value of the owner's remaining property. *Id.* at 801, 127 S.E.2d at 358. We continue to adhere to that view.

For the foregoing reasons, we will reverse the order confirming the report of the commissioners, set the report aside, and remand the case for further proceedings consistent with this opinion.

*Reversed and remanded.*