# Edwin W. Lynch, Jr.

### v.

# Commonwealth Transportation Commissioner

Record No. 930587

April 15, 1994

Present: All the Justices

*Haynie S. Trotter (E.A. Prichard; Joseph W. Wright, III; McGuire, Woods, Battle & Boothe,* on briefs), for appellant.

*James F. Hayes, Senior Assistant Attorney General (Stephen D. Rosenthal, Attorney General; Mary Yancey Spencer, Deputy Attorney General; Richard L. Walton, Jr., Senior Assistant Attorney General,* on brief), for appellee.

JUSTICE STEPHENSON delivered the opinion of the Court.

In this landowner's appeal from a judgment in a highway condemnation case, we decide whether the trial court erred in excluding certain exhibits and testimony that, according to the landowner, would have demonstrated the highest and best use of his property for purposes of proving the value of the land taken and damages to the residue.

The Commonwealth Transportation Commissioner (the Commissioner) made a bona fide, but ineffectual, effort to purchase a 9.358-acre tract of land from Edwin W. Lynch, Jr. The tract, which will be used for highway construction, is located in the Lorton area of

Fairfax County. The tract is a part of a larger tract containing 117 acres. Consequently, on October 30, 1990, the Commissioner recorded a certificate of take pursuant to Code § 33.1-122 and, on December 30, 1991, filed a petition requesting the trial court to appoint and empanel commissioners to determine just compensation due Lynch by virtue of the taking.

Following a trial, the commissioners filed a report fixing the value of the land taken at $740,000 and finding that respondent Lynch's remaining land was not damaged by reason of the taking. Lynch filed exceptions to the report which the trial court overruled. Thereupon, the trial court entered a final judgment confirming the report, and Lynch appeals.

When title to the land passed to the Commissioner by the recording of the certificate of take, Lynch's property was zoned R-1 (Residential). Sixteen months prior thereto, however, Lynch had filed with Fairfax County a rezoning application, seeking to have his land rezoned from R-1 to I-5 (General Industrial). Although the rezoning application had not been approved on the date of the taking, the County staff had endorsed Lynch's application, and the record indicates that approval of the application was a virtual certainty. Both parties agreed that the highest and best use of the property was for industrial purposes, not for residential purposes.

As early as March 23, 1987, the Board of Supervisors of Fairfax County established the Lorton-South Route 1 Area Citizens' Task Force (the Task Force) to study and make recommendations respecting development goals and objectives for the Lorton area of the County. After a series of meetings, the Task Force issued a report entitled, "A Comprehensive Development Plan for the Southern Gateway to the National Capital Area." The report recommended the development of Lynch's property for quality office buildings, up-scale industrial uses, and a major conference center/office complex with an incidental retail component.

Consistent with the Task Force's recommendation and the County's Comprehensive Plan, Lynch made plans to develop his land as an office/industrial park, consisting of office buildings and up-scale industrial space for leasing. In January 1990, Lynch filed with the County a Comprehensive Plan Amendment Application that incorporated the Task Force's recommendations. Thereafter, the Board of Supervisors approved the Plan Amendment and incorporated it into the Comprehensive Plan for the area.

Lynch retained the architectural and engineering firm of Dewberry & Davis to assist him in preparing his rezoning application. Dewberry

& Davis, with input from Lynch, then drafted a Generalized Development Plan for the industrial development of Lynch's property. This plat, admitted into evidence as Respondent's Exhibit 11, demonstrated that Lynch's land was suitable for industrial development prior to the taking of the 9.358 acres.

In advance of trial, the Commissioner filed a motion in limine, seeking to exclude from the evidence various proposed exhibits. The Commissioner claimed that the exhibits were inadmissible because they showed hypothetical and speculative development plans for Lynch's property. Although, as previously noted, the trial court admitted into evidence Respondent's Exhibit 11, the court excluded Respondent's Exhibits 11A, 12, and 12A. The court reasoned that the exhibits sought to prove the frustration of speculative plans for future use of the property. At trial, and for the same reason, the court barred the testimony of Lynch's expert real estate appraiser and Lynch's professional engineer, both of whom would have testified about the impact of the take on the residue of Lynch's land. The court also refused to allow the appraiser to testify concerning the reduction in floor area ratio (FAR).*

█ The principles governing the taking of property in condemnation cases are well established. The measure of compensation for the property taken is the fair market value of the property at the time of the taking. In determining fair market value, consideration is given to the property's adaptability and suitability for any legitimate purpose in light of conditions and circumstances that exist at the time of the take or that reasonably may be expected in the near future. The test of damages to the land remaining after the taking is the difference in the residue's value immediately before and immediately after the taking. In determining such damages, consideration may be given to every circumstance, present or future, that affects the residue's value at the time of the take. Remote or speculative advantages and disadvantages, however, are not to be considered. *Appalachian Electric Power Co.* v. *Gorman,* 191 Va. 344, 353, 61 S.E.2d 33, 37-38 (1950).

In *Gorman,* the condemnor instituted a condemnation proceeding to obtain an easement over the landowners' property for an electric power transmission line. The land was adaptable and suitable for a "high-class" residential subdivision. Several years prior to the condemnation proceeding, the landowners had employed a landscape architect to plat the tract into numerous lots and streets. The plat was

---

* FAR is the ratio of buildable space to the size of a tract of land and is a measure of the utility of commercial or industrial property. It is an integral part of the appraisal of such property.

prepared, but actual development of the subdivision was halted due to World War II. Over the condemnor's objection, the trial court admitted the plat into evidence.

On appeal, the condemnor argued that the plat erroneously allowed the commissioners to value the tract "upon the theory of what it might bring, planned and divided into building lots, rather than what the tract was worth in its present condition." *Id.* at 354, 61 S.E.2d at 38. The condemnor also asserted that "damage to the individual lots was speculative and imaginary because of dependence upon future developments, future improvements, future market and demands." *Id.*

■ We held, in *Gorman,* that the plat and the testimony relating thereto were properly admitted into evidence. We concluded that the plat "was useful and material in illustrating how the taking of the easement and the construction and operation of the power line changed the present and immediate situation with respect to the development of the tract and thereby affected both the present and immediate future use of the entire tract." *Id.* at 356-57, 61 S.E.2d at 39.

■ In *Gorman,* we also explained that, regarding damages to the remaining property, a landowner "is allowed to show the circumstances which make up the elements of damage to his property [and] . . . that a portion of it will be less valuable and how much less valuable, provided that consideration is given to the property as a whole." *Id.* at 357, 61 S.E.2d at 39. In this regard, we emphasized that "[a]n opinion without reason or grounds to support it is worth little." *Id.*

In *Appalachian Power Co. v. Anderson,* 212 Va. 705, 706-07, 187 S.E.2d 148, 151 (1972), the trial court admitted into evidence a plat, prepared for the landowners subsequent to the filing of the condemnation proceeding, showing the landowners' plans for future development of an addition to their existing trailer park. The trailer spaces shown on the plat, as well as the subdivision itself, were nonexistent. The plat, however, "did not correctly portray all existing facts." *Id.* at 709, 187 S.E.2d at 152. We held that the trial court erred in admitting the plat into evidence; however, a majority of the court, concurring in the result, stated the following:

> We concur that the judgment of the trial court should be reversed and the cause remanded for a new trial but we do not accept all the views expressed in the basic opinion. We agree that because the Cumbow map did not portray all existing conditions, it should not have been admitted in evidence. However, we would make it clear that but for the inaccuracy of the plat, a majority of the Court would approve its admission into evidence. Since it

was shown that the highest and best use of the landowners' property was for expansion of their trailer park, it would have been proper for them to prepare and introduce an accurate map of their property showing its potential and suitability as a subdivision for trailer sites and showing that the undeveloped portion thereof could be integrated into that portion which had been previously subdivided. Such an accurate map would have been admissible for the sole purpose of showing that the present value of the acreage involved was affected by its adaptability to and its availability for that highest and best use. We agree with our brethren that even if accurate, the map could not have been used for valuing the property taken or assessing damages to the residue on a per lot basis.

*Id.* at 714, 187 S.E.2d at 156.

■ In the present case, the trial court admitted into evidence Respondent's Exhibit 11, the generalized development plan prepared for Lynch by Dewberry & Davis. Thus, the court recognized that Lynch's land was adaptable and suitable for development as an office/industrial park and that such may be the highest and best use of the land. This plan for the property, therefore, was not speculative, but, based upon study and planning, represented a real and present potential use in the light of existing conditions and circumstances.

■ The trial court, however, refused to admit into evidence Respondent's Exhibits 11A, 12, and 12A. Respondent's Exhibit 11A is a composite of Exhibit 11 with an overlay showing the Commissioner's taking. If admitted into evidence, it would have shown nothing to the commissioners that they had not seen from Respondent's Exhibit 11 and other exhibits offered by the Commissioner. Exhibit 11A simply placed all relevant material on a single plat. Respondent's Exhibit 12 is a revised generalized development plan, prepared by Dewberry & Davis, showing development changes Lynch claims were necessitated by the taking. Respondent's Exhibit 12A is merely a composite of Exhibit 12 with an overlay showing the impact of the taking on the potential development of Lynch's property.

■ We think these three exhibits should have been admitted into evidence. They, like Respondent's Exhibit 11, demonstrated the property's potential, the adaptability and suitability of the property for its highest and best use, and the impact of the taking on the remaining property.

■ For the same reason, the trial court erred in not allowing Lynch's expert witnesses to testify about the impact of the taking on the residue of the property. Lynch sought to show that the development potential of the residue had been reduced because of the residue's size and topography. We think this evidence was proper and relevant in the circumstances of this case. We also think the appraiser should have been allowed to express his opinion in terms of the FAR. The record shows that industrial property of the kind involved in the present case is bought and sold in Fairfax County by the FAR, not by the square foot or by the acre.

■ In sum, the trial court erred in excluding the exhibits and testimony relating to Lynch's claim of damage to the residue. His claim is not based upon frustration of speculative plans for future use of property, *see, e.g., State Hwy. & Transp. Comm'r* v. *Lanier Farm,* 233 Va. 506, 510, 357 S.E.2d 531, 533 (1987); rather, it is based upon a use that Lynch reasonably might have made of his property in the light of existing conditions and circumstances. The present case, in principle, is virtually indistinguishable from *Gorman,* and the conclusion we reach is consistent with the majority's view in *Anderson.*

Accordingly, the trial court's judgment will be reversed and the case remanded for a new trial.

*Reversed and remanded.*