Present: Carrico, C.J., Compton, Stephenson, Lacy, Hassell, and
Keenan, JJ., and Cochran, Retired Justice

WAMMCO, INC.

v.  Record No. 950752    OPINION BY JUSTICE BARBARA MILANO KEENAN
                                        January 12, 1996
COMMONWEALTH TRANSPORTATION
COMMISSIONER OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
William L. Forbes, Judge


In this appeal from a judgment in a highway condemnation
proceeding, we decide whether the trial court properly excluded
evidence of adjustment costs as an element of damage to the
residue of the property.

## I.  Proceedings

The Commonwealth Transportation Commissioner (the
Commissioner) made a bona fide, but ineffectual, effort to
purchase a 17.65-acre tract of land in the City of Chesapeake for
construction of a portion of Interstate Highway 664 (I-664).
This tract was a part of a larger tract containing 314 acres.

In 1989, the Commissioner recorded a certificate of take
pursuant to Code § 33.1-122 for the 17.65-acre tract, followed by
a petition in condemnation in 1990 asking the trial court to
appoint commissioners to determine just compensation due the
landowner as a result of the taking.  When the certificate of
take and the petition were filed, the property was owned by New
Boone Farm Associates.  In February 1993, WAMMCO, Inc. (Wammco)
acquired the property and was granted leave to intervene in the
proceedings.

At the condemnation trial, Wammco sought $362,496 for the

17.65 acres taken and $2,414,042 for damage to the residue. During trial, the court excluded Wammco's proffered evidence of adjustment costs allegedly necessary to develop the property as a result of the take.

The condemnation commissioners returned a report valuing the land taken at $356,165 and damage to the residue at $68,740. Wammco filed exceptions to the commissioners' report and requested a new trial based on the exclusion of its proffered evidence. The trial court denied Wammco's request and entered an order confirming the commissioners' report.

## II. Admitted Evidence

The following evidence was presented to the commissioners. Prior to the construction of I-664, the 314 acre parcel (the property) was bisected by Gum Road, a country road which was then a segment of the only continuous north-south route through the Western Branch area of Chesapeake. When I-664 was constructed through the property, Gum Road was cut in half. Since Gum Road was not provided access to I-664, a cul-de-sac was created on each end of the road next to the highway.

The portion of the property west of Gum Road was zoned for industrial use at the time of the taking. The portion of the property east of Gum Road was zoned for agricultural use at the time of the taking, but was re-zoned for residential development four days later. The parties agree that the highest and best use of the eastern portion is for residential development.

Walton Peter Burkhimer, Jr., a civil engineer, testified that, prior to the taking, Gum Road provided sufficient access to the property to support development in accordance with its highest and best use. However, when Gum Road was severed by the taking, access to the property was so severely restricted that the western portion is now unsuitable for industrial use.

D.L. McKnight, a real estate appraiser, likewise testified that, since Gum Road was severed by the taking, the western portion of the property can no longer be developed without the acquisition of additional land for road access. In McKnight's opinion, this inadequate road access to the property has caused the highest and best use of the western portion to be reduced from industrial to "assemblage."[1]

McKnight stated that this change from industrial to "assemblage" use has diminished the value of the residue by $1,029,722. This figure was based on his opinion that the western portion of the property has been devalued in the amount of $6,166 per acre as a result of the take.

### III. Proffered Evidence

The Commissioner made a motion in limine to exclude any evidence of adjustment costs allegedly necessitated by the take.

---

[1]McKnight explained that so-called "assemblage" use means that additional land must be acquired in order to develop the property.

Wammco proffered the following testimony regarding these costs.

Burkhimer stated that, as a result of the take, both on-site and off-site improvements will have to be made in order to develop the property in accordance with its highest and best use. Burkhimer testified that additional land and right of ways will have to be acquired, and that the off-site road network to the residue will have to be improved, in order to provide sufficient road access to develop the western portion of the property for industrial use. He also stated that, as a result of the taking, an additional road will have to be built off the property site in order for the eastern portion of the residue to be developed in accordance with Wammco's post-take plan.

Burkhimer further testified that, in order to connect with these off-site improvements, Wammco will have to construct, on-site, new roads and sanitary sewer service improvements that would have been unnecessary prior to the taking. According to Burkhimer, the total cost of on-site improvements necessary for development of the residue is approximately $1,236,000. He specifically excluded from these calculations the on-site development costs that would have existed without the construction of I-664.

Wammco also proffered additional evidence from McKnight that, based on the increased development costs of $1,236,000, he made an additional downward adjustment in the value of property in the amount of $1,384,320. Combining this figure with the

$1,029,722 figure he gave earlier for the present loss of industrial use of the western portion of the residue, McKnight placed the total damage to the residue at $2,414,042. The trial court excluded the proffered evidence of adjustment costs, including three exhibits offered by Wammco.[2] The court stated, "It's too speculative . . . there is no plan, no proposed improvement."[3]

## IV. Issue on Appeal

On appeal, Wammco argues that the trial court erred in excluding the proffered testimony and exhibits. Wammco contends that it was entitled to have the commissioners consider the costs necessary to adjust the property to its changed condition, as well as the reasonable potential use of the property at the time of the taking. Citing Lynch v. Commonwealth Transp. Comm'r, 247 Va. 388, 391, 442 S.E.2d 388, 390 (1994), Wammco asserts that every present or future circumstance affecting the value of the residue at the time of the taking is admissible evidence.

[2]Exhibit 1 depicted a street and lot configuration for development of the property "without I-664." Exhibit 2 showed road improvements and a proposed lot layout for development "with I-664." Exhibit 3 listed the net cost increases for developing the property after the construction of I-664.

[3]In its ruling, the trial court did not state that Wammco was required to present a recorded subdivision plat or plan.

In response, the Commissioner argues that Wammco's evidence of increased development costs is speculative and inadmissible, because Wammco's ability to develop the property is contingent on future events beyond Wammco's control, namely, an upgrading of the road network in the vicinity of Gum Road. We agree with the Commissioner.[4]

Initially, we review the principles governing the determination of damages to the residue of property taken in a condemnation case. In <u>Lynch</u>, we stated that

> [t]he test of damage to the land remaining after the taking is the difference in the residue's value immediately before and immediately after the taking. In determining such damages, consideration may be given to every circumstance, present or future, that affects the residue's value at the time of the take. Remote or speculative advantages and disadvantages, however, are not to be considered.

<u>Id.</u> at 391, 442 S.E.2d at 390; <u>see also</u> <u>Appalachian Elec. Power Co. v. Gorman</u>, 191 Va. 344, 353, 61 S.E.2d 33, 37–38 (1950).

Adjustment costs, also commonly referred to as increased development costs, are those costs necessary to adjust the property to the changed conditions caused by the taking.

---

[4]At trial, the Commissioner argued, among other things, that the proffered evidence was speculative because, in order to develop the property, Wammco would "have to get approval from the City to do all sorts of things." This objection adequately preserved the argument which the Commissioner advances here regarding the speculative nature of the proffered evidence.

*Dressler v. City of Covington*, 208 Va. 520, 522, 158 S.E.2d 660, 662 (1968).  Adjustment costs are relevant to determining any diminution in the market value of the residue as a result of the taking.  Id.  "However, such cost[s] [are] not the measure of damages and cannot be recovered specifically.  In other words, evidence of the actual cost of necessary improvements is admissible as a factor of evaluation, though not as a measure of damages."  Id.  The measure of damages to the residue remains the difference in value before and immediately after the taking, less any enhancement resulting from the taking. *State Highway & Transp. Comm'r v. Parr*, 217 Va. 522, 524, 230 S.E.2d 253, 255 (1976).

Like any other evidence of damage to the residue, evidence of adjustment costs is inadmissible if it is based on remote or speculative factors.  See *Lynch*, 247 Va. at 393, 442 S.E.2d at 391.  As we stated in *State Highway & Transp. Comm'r v. Lanier Farm*, 233 Va. 506, 357 S.E.2d 531, (1987), "[i]t is the present actual value of the land with all its adaptations to general and special uses, and not its prospective, or speculative, or possible value based upon future expenditures and improvements that is to be considered."  Id. at 510, 357 S.E.2d at 533, (quoting *Richmond & P.R. Co. v. Seaboard, &c., Co.*, 103 Va. 399, 407, 49 S.E. 512, 515 (1905)).  The facts of the present case illustrate this principle.

We will assume, without deciding, that Wammco's property

could have been developed before the taking in accordance with its highest and best use. We also note, as stated above, that the adjustment costs proffered by Wammco reflect only the cost of on-site roads and sewer service improvements necessitated by the take to develop the property to its highest and best use.

Nevertheless, the evidence shows that development of the residue is contingent on the improvement of off-site roads in the vicinity of the residue and the acquisition of property of others to provide access to the site. With regard to the western portion of the property, Burkhimer stated that "you'd essentially have to acquire a lot and then buy one more lot, and then you've got to acquire land across [an] intervening parcel, over which there is no right of way, so as to be able to get access or a right of access." McKnight also testified that development of the western portion of the property would require acquisition of the property of others and, thus, that the property presently is unsuited for immediate industrial development.

Concerning the eastern portion of the property, Burkhimer testified that Wammco's post-take plan requires a collector or minor arterial street following "the old railroad right of way out to Taylor Road . . . to be built in order for the east side to be developed." The record shows that the construction of such a collector road would entail off-site improvements.

From the above testimony, Wammco's evidence shows that development of the property is contingent on future acts beyond

Wammco's control which are remote and speculative.  If these acts or other acts necessary for an alternative plan of access are not accomplished, the property cannot be developed in accordance with Wammco's post-take plan and the on-site improvements will not be required.  Thus, as a matter of law, the evidence of these on-site adjustment costs is speculative and inadmissible.

We disagree with Wammco's contention that our decisions in Lynch and Gorman require a different result.  In these cases, the landowner's ability to develop the residue was not contingent on off-site improvements that were within the control of others.  In Lynch, the evidence showed that the development potential of the property had been reduced solely because of impact of the take on the size and topography of the residue.  247 Va. at 394, 442 S.E.2d at 391.

Likewise, in Gorman, the landowners' ability to develop the residue was not dependent on contingencies beyond their control.  There, the evidence of diminished value to the residue consisted of testimony that the lots which could be placed on the residue were of lesser value than the lots planned for the property immediately prior to the take.  191 Va. at 348, 61 S.E.2d at 35.

We also find no merit in Wammco's contention that, if it is not able to produce evidence of its increased development costs, Wammco is left without any compensation for the impairment of its ability to develop the property.  Wammco presented evidence of its impaired ability to develop the western portion of the

property.  As stated above, McKnight testified without objection that the value of the residue had diminished by $1,029,722 because the western portion of the property was suited only for "assemblage" use after the take.  Thus, the commissioners were allowed to consider the direct effect on the value of the residue resulting from Wammco's inability to develop this portion of the property.

Finally, we note that Wammco did not attempt to offer similar evidence with regard to the eastern portion of the property.  Although the evidence before the commissioners did not show that off-site property would have to be acquired to develop the eastern portion, it did show that Wammco's ability to develop this portion of the property under its post-take plan was contingent on the construction of off-site road improvements beyond Wammco's control.[5]  Thus, this limitation on development was a factor relevant to the value of the residue immediately after the take.

For these reasons, we will affirm the trial court's judgment confirming the commissioners' report.

---

[5]We note, however, that Wammco can develop the eastern portion without off-site improvements if it redesigns its post-take plan to include fewer lots.  Burkhimer testified that the additional access would be required only if the parcel is developed into 100 or more lots.

JUSTICE STEPHENSON, with whom CHIEF JUSTICE CARRICO and RETIRED JUSTICE COCHRAN join, dissenting.

I respectfully dissent. I think, based upon our holdings in Lynch v. Commonwealth Transportation Comm'r, 247 Va. 388, 442 S.E.2d 388 (1994), Appalachian Power Co. v. Anderson, 212 Va. 705, 187 S.E.2d 148 (1972), and Appalachian Elec., Etc., Co. v. Gorman, 191 Va. 344, 61 S.E.2d 33 (1950), the trial court erred in excluding the proffered evidence. I do not think this evidence, taken as a whole, was speculative. Instead, the proffered evidence, consisting of both oral testimony and physical exhibits, presented "a real and present potential use in the light of existing conditions and circumstances," demonstrated "the adaptability and suitability of the property for its highest and best use," and illustrated "the impact of the taking on the remaining property." Lynch, 247 Va. at 393, 442 S.E.2d at 391.

I also think that the majority, in deciding the case, has relied upon objections raised for the first time on appeal. The sole objection at trial, and the basis for the trial court's ruling, was that the evidence was speculative because there was no recorded subdivision plat or plan. On appeal, however, the Commissioner has abandoned that ground and raises numerous objections to the proffered evidence, none of which were raised at trial. Clearly, this violates our rule that objections will not be considered on appeal unless they are "stated with reasonable certainty at the time of the ruling." Rule 5:25.

Accordingly, I would reverse the trial court's judgment and remand the case for a new trial.