JUSTICE KEENAN, with whom JUSTICE HASSELL and JUSTICE KOONTZ join, dissenting.
*622 I respectfully dissent. The different purposes and methodologies inherent in valuations made for tax purposes and those made for determining just compensation undermine the validity of using one type of valuation as evidence to impeach an expert witness’s testimony regarding the other type of valuation.
Generally, the credibility of a witness may be impeached by showing that the witness made statements on a prior occasion that are inconsistent with his present testimony. Breeden v. Roberts, 258 Va. 411, 415-16, 518 S.E.2d 834, 837 (1999); Commercial Distributors, Inc. v. Blankenship, 240 Va. 382, 394, 397 S.E.2d 840, 847 (1990); Neblett v. Hunter, 207 Va. 335, 340, 150 S.E.2d 115, 119 (1966). Thus, the evidentiary issue before this Court is whether the prior valuation of the Russells’ land made for tax assessment purposes presented an inconsistency bearing on the credibility of Stacy’s valuation testimony at trial.
This Court has recognized that the purpose of tax assessment valuations is to equalize the taxation burden among landowners. Norfolk & W. Ry. Co. v. Commonwealth, 211 Va. 692, 695, 179 S.E.2d 623, 625 (1971); Southern Ry. Co. v. Commonwealth, 211 Va. 210, 214, 176 S.E.2d 578, 581 (1970). We have enforced this principle by requiring uniformity in the mode of assessment and in the rate of taxation. Id. We have stated that it is not important whether a tax assessment is high or low, as long as the assessment is uniform and made in accordance with the methods of valuation adopted in the taxing district as a whole. City of Roanoke v. Gibson, 161 Va. 342, 347, 170 S.E. 723, 725 (1933). Thus, the essential characteristic of valuations made to determine tax assessments is the setting of uniform, rather than exact, values of the properties to be assessed.
In contrast, when land has been condemned, the purpose of determining fair market value of the condemned property is to compensate the landowners fully for the value of what they have lost. It is well settled that “just compensation” is the fair market value of the property at the time of the taking, based on the “most advantageous and valuable use” or the “highest and best use” of the land. Lynch v. Commonwealth Transp. Comm’r, 247 Va. 388, 391, 393, 442 S.E.2d 388, 389, 391 (1994); Appalachian Power Co. v. Anderson, 212 Va. 705, 708, 187 S.E.2d 148, 152 (1972); Appalachian Elec. Power Co. v. Gorman, 191 Va. 344, 354, 61 S.E.2d 33, 38 (1950). The landowner is entitled to compensation that is the “full and perfect equivalent” for the property. Appalachian Power Co. v. Anderson, 212 Va. at 708, 187 S.E.2d at 152; Gorman, 191 Va. at 354, 61 *623 S.E.2d at 38; Anderson v. Chesapeake Ferry Co., 186 Va. 481, 490, 43 S.E.2d 10, 15 (1947). Therefore, the essential characteristic of valuations made to determine just compensation is the setting of exact values rather than values that are uniform and proportional to the values of any other properties.
While Article X, Section 2, of the Constitution of Virginia and Code § 58.1-3201 require that tax assessments be made at fair market value, this requirement does not render the two types of valuations analogous. Article X, Section 1 of the Constitution of Virginia provides that all property taxes “shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax.” The dominant purpose of Sections 1 and 2, construed together, is to distribute the burden of taxation evenly and equitably, in so far as is practical. Board of Supervisors v. Telecommunications Indus., Inc., 246 Va. 472, 477, 436 S.E.2d 442, 445 (1993); R. Cross, Inc. v. City of Newport News, 217 Va. 202, 207, 228 S.E.2d 113, 117 (1976); Smith v. City of Covington, 205 Va. 104, 108, 135 S.E.2d 220, 222-23 (1964); Skyline Swannanoa v. Nelson County, 186 Va. 878, 881, 44 S.E.2d 437, 439 (1947). If it is impractical or impossible to enforce both the standard of fair market value and the standard of uniformity and equality, the standard of uniformity and equality must be preferred as the just and ultimate end to be attained. Id.
In a condemnation proceeding, however, the standard of fair market value does not yield to any other principle. An expert appraiser’s determination is bound by fixed considerations such as the availability and suitability of the land for all legitimate uses, considering the existing business demands of the community or such demands that may reasonably be expected in the near future. See Lynch, 247 Va. at 391, 442 S.E.2d at 389-90; Anderson, 212 Va. at 708, 187 S.E.2d at 152; Gorman, 191 Va. at 354, 61 S.E.2d at 38. These and other considerations relating to the fair market value of the property are not affected by concerns for uniformity and equality.
Therefore, I would conclude that, based on these different purposes and methodologies, evidence of a valuation made for tax assessment purposes does not present an inconsistency bearing on the credibility of an expert witness who valued the property at a different amount for purposes of determining just compensation in a condemnation proceeding. This conclusion is not altered by the fact that in the present case the same person made both valuations. The differing nature of the two types of valuations, not the possibility of different appraisers, creates the disparity that undermines the validity of using *624 one type of valuation as impeachment evidence to challenge the credibility of an expert’s testimony concerning the other type of valuation. Thus, I would hold that in a condemnation proceeding, evidence of a valuation made to determine a tax assessment is generally inadmissible to impeach the testimony of an expert witness regarding his valuation of the property for purposes of determining just compensation. Accordingly, I would conclude that the trial court erred in allowing the disputed impeachment evidence.