PRESENT:  Goodwyn, Mims, Powell, Kelsey, McCullough, and Chafin, JJ., and Russell, S.J.

PALMYRA ASSOCIATES, LLC, ET AL.

OPINION BY
v.  Record No. 191680                    JUSTICE STEPHEN R. McCULLOUGH
                                         December 17, 2020
COMMISSIONER OF HIGHWAYS

FROM THE CIRCUIT COURT OF FLUVANNA COUNTY
Richard D. Taylor, Jr., Judge Designate

The landowner in a condemnation proceeding challenges several rulings below:  (1) the court's decision to strike the testimony of the owner of the property concerning damage to the residue of the property; (2) the court's refusal to admit site plans into evidence; and (3) the court's inquiry after the trial whether it should hold a new trial or confirm the value of the take. For the reasons noted below, we will affirm the judgment of the circuit court.

BACKGROUND

Palmyra Associates, LLC ("Palmyra") owned 44.048 acres of land in Fluvanna County. The property is situated at the intersection of Routes 15 and 53.  Consistent with the County's comprehensive plan, Palmyra intended to develop the property into a commercial development. Palmyra had site plans drawn up in the decade prior to the take.  As of the date of the take, however, the property remained an unimproved wooded lot.

To improve traffic flow at the intersection of Routes 15 and 53 in Fluvanna County, the Commissioner of Highways ("VDOT") decided to upgrade the "T" shaped intersection into a roundabout.  VDOT sought to acquire from Palmyra approximately 7,200 square feet (0.166 of an acre) in fee simple, 4,500 square feet (0.103 of an acre) for a permanent drainage easement, and 1,930 square feet (0.0443 of an acre) in temporary construction easements.

The parties could not reach an agreement on VDOT's offer to purchase the land. VDOT then recorded a certificate of take on January 7, 2016 and a petition in condemnation on July 1, 2016. Palmyra asked for the appointment of commissioners to resolve the question of compensation.

Palmyra's initial expert witness designation stated that David G. Sutton, the co-owner of the property, would testify that "a one (1) acre pad site on the front portion of the property has a value of approximately $400,000," and his "opinion[]" as to "damages to the residue" would "us[e] . . . $400,000 as the value of a one (1) acre pad site fronting Route 15." In a supplemental answer to an interrogatory, Palmyra indicated that Sutton would "opine that the roundabout has reduced the development potential of the residue by reducing its frontage size and thus eliminating a fourth building pad," resulting in damages to the residue in the amount of $545,000.

Relying on *Appalachian Power Co. v. Anderson*, 212 Va. 705 (1972), VDOT filed a pre-trial motion to exclude testimony from the owners of the parcel to the extent it relied on the loss of a non-existent pad site in estimating the value of the damage to the residue. VDOT argued that "[a]lthough Palmyra Associates may be able to present evidence that the subject property is 'suitable' to being subdivided for commercial pad sites, it is improper to value the subject property as if it was an actual subdivided one-acre pad site on the date of the take." The circuit court held that Sutton could testify, but that he could not offer evidence of damages to the residue on a per lot basis.

Palmyra also sought to introduce site plans into evidence, which the trial court refused. Those site plans depicted a proposed commercial development for the property. Refused Exhibit A consisted of 22 pages of detailed site plans of development prepared and filed with the county

2

over 10 years prior to the take. Ex. Add. 2-23. Refused Exhibit B showed a site plan reflecting changes to Route 15 resulting from another construction project. Refused Exhibit C was an overlay of the roundabout project (including the planned "fourth leg" entrance) which was prepared using VDOT's plan for the roundabout project, overlaid on the site plans depicted in Refused Exhibits A and B.

The County had not approved these site plans. Sutton testified that the County had approved "the concept" but had not given approval of the final plan. He also explained that the County imposed a number of conditions, but, as of the date of the take, Palmyra had not met those conditions. A significant portion of the property was in a floodplain. Therefore, Palmyra needed County approval to build on the floodplain. Palmyra acknowledged it may need to construct a retaining wall to gain the County's approval. The site plans also showed additional infrastructure improvements, such as the widening of a road and bridge and the construction of two entrances.

At trial, Sutton testified that the loss to the residue caused by the taking was $545,000. When asked how he arrived at that figure, he responded that he "took the frontage acreage, which is roughly 5.5 acres that [he] had previously valued at $2.2 million, and [the take] damaged that at twenty-five percent." Sutton further explained that "we've lost significant development potential across that frontage because of the imposition of the fourth leg of the roundabout, as well as because the property that was taken reduced our frontage and compressed where we could develop on that first primary acreage." After deliberating, the commissioners returned with a majority award and a minority award. The three commissioners nominated by Palmyra returned the majority award, including $66,400 for the fee simple acquisition, $37,187 for the drainage easement, $3,544 for the temporary construction easement, and $350,000 for

3

damages to the residue, amounting to total just compensation in the amount of $457,131. The two commissioners nominated by VDOT returned the minority award, including $66,400 for the fee simple acquisition, $37,187 for the drainage easement, $3,544 for the temporary construction easement, and $125,000 for damages to the residue, amounting to total just compensation in the amount of $232,131.

VDOT filed post-trial exceptions to the commissioners' report. Among other things, VDOT argued that Sutton's testimony about damage to the residue must have been based on the loss of a pad site, in contravention of the court's pre-trial ruling that such testimony was inadmissible. VDOT pointed to the fact that, at trial, Sutton estimated the damage to the residue at $545,000, the same figure as the damages estimate Sutton reached pre-trial based on the loss of a pad site. VDOT further noted that, at trial, Sutton's testimony did not supply "any basis for his conclusion that the development potential of the property was reduced in any way other than the elimination of a fourth building pad site." Consequently, VDOT contended, "[t]he only basis for Mr. Sutton's opinion that the development potential of the residue was reduced was the elimination of a fourth building pad site, which the Court previously ruled was improper." The circuit court agreed. It concluded that Sutton had testified in contravention of the court's pre-trial ruling and his testimony should be stricken.

Following the trial, the circuit court stated that it would "entertain argument" by counsel "as to whether the Court should" follow one of two approaches: "confirm the award of the take only, or grant a new trial." Counsel for VDOT responded that the parties "agree . . . that . . . the Court should enter a Final Order in this matter setting aside the damage award and confirming the award for the value of the take, only." Counsel for Palmyra clarified that while the parties did not agree on the court's ruling striking the testimony, "both sides agree to the first of the 2

4

options [the court] gave [them]." That option was that "the Court should confirm the award of the take only" rather than "grant a new trial."

The circuit court entered a Final Order confirming the commissioners' award of $107,131 for the take and setting aside the award for damages to the residue. This appeal followed.

ANALYSIS

I.    THE CIRCUIT COURT DID NOT ABUSE ITS DISCRETION IN EXCLUDING PALMYRA'S SITE PLANS FROM CONSIDERATION BY THE COMMISSIONERS BECAUSE A NUMBER OF SIGNIFICANT CONTINGENCIES EXISTED BEFORE THOSE PLANS COULD BE APPROVED.

Palmyra assigns error to the circuit court's

> refus[al] to admit into evidence site plans [the] Landowner had prepared over 10 years prior to the take showing the development potential of their property and overlays showing the impact of the imposition of the fourth leg of the roundabout on the development potential of their property.[1]

"In every eminent domain case involving a partial taking, the measure of damages to the residue of the property not taken is the difference in the fair market value of the residue immediately before and immediately after the taking." *City of Virginia Beach v. Oakes*, 263 Va. 510, 516 (2002) (quoting *East Tennessee Nat. Gas Co. v. Riner*, 239 Va. 94, 100 (1990)). "In ascertaining such damages, both present and future circumstances which actually affect the value of the property at the time of taking may be considered, but remote and speculative damages may not be allowed." *Id.* For example, when there exists a reasonable probability of a favorable re-zoning, a prospective buyer and seller would consider that circumstance in valuing the parcel on the date of the take. *Helmick Family Farm, LLC v. Commissioner of Highways*, 297 Va. 777,

---

[1] VDOT argues that this assignment of error is procedurally defaulted because Palmyra failed to file any exceptions to the commissioners' report at the conclusion of the trial. We disagree. The development plans were excluded pre-trial and did not inform the commissioners' report. Palmyra opposed the court's pre-trial exclusion of the site plans. That is sufficient to preserve the point for appellate review. *See* Code § 8.01-384.

5

791 (2019). Site plans can similarly be relevant if a prospective willing buyer would recognize the probability of site plan approval in the near future when determining market value.

A number of our cases demonstrate the range of discretion a trial court can exercise in determining whether to admit site plans in a takings case. For example, in *Lynch v. Commonwealth Transportation Commissioner*, 247 Va. 388 (1994), we held that the court erred in refusing to admit the site plans proffered by the landowner. *Id.* at 394. The County had recommended "the development of Lynch's property for quality office buildings, up-scale industrial uses, and a major conference center/office complex with an incidental retail component." *Id.* at 390. Lynch then made plans consistent with the County's recommendations to "to develop his land as an office/industrial park, consisting of office buildings and up-scale industrial space for leasing." *Id.* An architectural and engineering firm drafted a Generalized Development Plan for the industrial development of Lynch's property. *Id.* at 390-91. This plat demonstrated that Lynch's land was suitable for industrial development prior to the taking of a portion of the land. *Id.* at 391.

The circuit court in *Lynch* excluded three exhibits from evidence: (1) a plat showing the general development plan with an overlay showing the taking; (2) a revised generalized development plan, showing development changes Lynch claimed were necessitated by the taking; and (3) a revised generalized development plan with an overlay showing the impact of the taking on the potential development of Lynch's property. *Id.* at 393.

We concluded that these exhibits should have been admitted into evidence because they "demonstrated the property's potential, the adaptability and suitability of the property for its highest and best use, and the impact of the taking on the remaining property." *Id.*

6

Conversely, in *Wammco, Inc. v. Commonwealth Transportation Commissioner*, 251 Va. 132 (1996), we upheld the court's exclusion of evidence proffered by the landowner to establish "the costs necessary to adjust the property to its changed condition, as well as the reasonable potential use of the property at the time of the taking." *Id*. at 136. We reasoned that the claims of damage were "contingent on the improvement of off-site roads in the vicinity of the residue and the acquisition of property of others to provide access to the site." *Id.* at 138.

"[A] trial court's decision to admit or exclude evidence," including in eminent domain proceedings, is reviewed for "abuse of discretion." *Dean v. Board of County Supervisors*, 281 Va. 536, 540 (2011); *see also Ramsey v. Commissioner of Highways*, 289 Va. 490, 495 (2015). Discretion means a "range of choice" and we will not reverse a trial court's decision unless the court's discretionary decision exceeded the "outermost limits of the range of choice available." *Reyes v. Commonwealth*, 297 Va. 133, 140 (2019) (quoting *Lambert v. Sea Oats Condo. Ass'n, Inc.*, 293 Va. 245, 253 (2017)). Such a deviation is not present here.

It is worth noting preliminarily that Sutton was permitted to testify about the County's comprehensive plan, which contemplated commercial development. He also testified about the status of the site plans, namely, that the County had approved the plans "in concept" but that they were subject to certain conditions. Sutton also explained that the property was zoned commercial in the central part and for its frontage, and the rest of the property was zoned agricultural.

On the record before us, we are unwilling to hold that the trial court abused its discretion in excluding the site plans. First, the site plans had not been approved. Although not dispositive, this circumstance is relevant. Second, although Palmyra asserted that the County had approved "the concept," the County had imposed a number of conditions on such approval. As of the date

7

of the take, Palmyra had still not met those conditions. Third, the property is situated in a floodplain, and it was unclear whether Palmyra would have to build a retaining wall or whether, as Sutton testified, Palmyra could avoid building a retaining wall and instead "complete the fill . . . by having a toe that goes far enough out." If so, Palmyra would have needed to "lose a little land." The parties also disputed whether, under the site plans proffered by Palmyra, a road and nearby bridge would need to be widened or a new bridge built, at a cost of around $4 million. At any rate, to open an undeveloped parcel to commercial development, Palmyra needed an entrance to its proposed development, whether via a "fourth leg" to the roundabout or some other means. Palmyra would also need to gain approval for this entrance. Given all of these circumstances, the trial court did not abuse its discretion in declining to admit the ten-year-old site plans.

II.     THE TRIAL COURT PROPERLY STRUCK SUTTON'S TESTIMONY.

Palmyra also assigns error to the circuit court's decision to strike, post-trial, Sutton's testimony concerning damage to the residue. Palmyra argues that the circuit court erred in "finding that Mr. Sutton's testimony had anything to do with damaging the property on a 'per lot' basis." Palmyra suggests other ways that Sutton might have arrived at the same damages figure pre-trial and during trial.

The circuit court ruled pre-trial that Sutton could not rely on the loss of a non-existent pad site in estimating the value of the damage to the residue of the property. Prior to trial, Sutton had based his valuation on the loss of "a fourth building pad" and he estimated the damages to the residue in the amount of $545,000. At trial, Sutton testified that the loss to the residue caused by the taking was $545,000 – the very same figure he employed pre-trial. When asked at trial how he arrived at that figure, he responded that he "took the frontage acreage, which is

8

roughly 5.5 acres that [he] had previously valued at $2.2 million, and [the take] damaged that at twenty-five percent." Sutton further explained that "we've lost significant development potential across that frontage because of the imposition of the fourth leg of the roundabout, as well as because the property that was taken reduced our frontage and compressed where we could develop on that first primary acreage."

Sutton's testimony concerning lost "development potential" was necessarily rooted in a lost "pad site." This hypothetical pad site depended on contingent and speculative site plans — plans the trial court properly excluded. The property's development potential was uncertain because the County had imposed certain conditions, which Palmyra had not satisfied; the property was situated in a flood plain, which would necessitate adjustments; and the property would need additional infrastructure changes to be developed as a commercial site. Consequently, on these specific facts, the trial court did not err in striking Sutton's testimony.[2]

III.    THE DOCTRINE OF INVITED ERROR FORECLOSES RELIEF ON PALMYRA'S CLAIM THAT THE TRIAL COURT "PUT THE PARTIES ON TERMS."

In its remaining assignment of error, Palmyra asserts that "[t]he trial court erred in putting the parties on terms of either the court confirming the value of the take or ordering a new trial." Code § 25.1-233(A) provides that "[t]he report of the body determining just compensation may be confirmed or set aside forthwith by the court." A circuit court has "the same power over

_____

[2] Justice Harrison, writing for three justices in *Appalachian Power Co.*, 212 Va. at 711, wrote that a landowner may not "treat[] the affected land . . . as divided into lots when in fact it is undeveloped acreage." *Appalachian Power Co.*, 212 Va. at 711. A majority of the Court concurred in the result while stating that it did "not accept all the views expressed in [Justice Harrison's] opinion." *Id.* at 714. Based on our resolution of this case we do not examine whether and if so, to what extent, a landowner may offer evidence that the property's fair market value would be affected by a reasonable probability that land would be divided into lots. *Cf. Helmick Family Farm, LLC*, 297 Va. at 791.

9

the reports of the body determining just compensation as it . . . has over verdicts of juries in civil actions."  Code § 25.1-233(B).

After the court struck Sutton's testimony, it informed the parties that it would "entertain argument" as to whether the trial court should "confirm the award of the take only, or grant a new trial."  Palmyra did not object at that time that the trial court was "putting it on terms." Instead, it agreed that the circuit court should confirm the award rather than grant a new trial. The invited error doctrine precludes a litigant from "approbating and reprobating" – that is "invit[ing] error, as the [litigant] … did here, and then [attempting to take] advantage of the situation created by his own wrong."  *Cohn v. Knowledge Connections, Inc.*, 266 Va. 362, 367 (2003).  The invited error doctrine bars us from considering this assignment of error.

CONCLUSION

For the foregoing reasons, we will affirm the decision of the trial court.

*Affirmed*.

10